UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SILVER STATE INTELLECTUAL TECHNOLOGIES, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )       2:11-CV-1578-PMP-PAL |
| GARMIN INTERNATIONAL INC. AND GARMIN USA, INC., | ) )       ORDER ) |
| Defendants. | ) ) |

Before the Court is Plaintiff Silver State Intellectual Technologies, Inc.'s ("Silver State") Consolidated Opening Claim Construction Brief[1] (Doc. #53), filed September 28, 2012.  Defendants Garmin International, Inc. and Garmin USA, Inc. (collectively "Garmin") filed a Response (Doc. #54) on October 26, 2012.  Silver State filed a Reply (Doc. #55) on November 9, 2012.  The Court held a claim construction hearing on April 5, 2013.  (Mins. of Proceedings (Doc. #74).)

## I. BACKGROUND

Plaintiff Silver State owns the legal rights to United States Patent Nos. 6,525,768 (the '768 Patent), 6,529,824 (the '824 Patent), 7,702,455 (the '455 Patent), 7,522,992 (the '992 Patent), 7,593,812 (the '812 Patent), 7,739,039 (the '039 Patent), 7,650,234 (the '234

---

[1]  The Court granted the parties' request that the claim construction in this case be coordinated with a related case, Silver State Intellectual Technologies, Inc. v. Tom Tom, Inc., Case No. 2:11-CV-01581-PMP-PAL (D. Nev.).  (Order Granting Joint Mot. & Stip. to Transfer & Consolidate Related Cases (Doc. #46).)  On March 19, 2013, pursuant to Silver State and Tom Tom, Inc.'s stipulation, the Court dismissed with prejudice Silver State's case against Tom Tom, Inc.  (Order Granting Stip. to Dismiss with Prejudice (Doc. #82 in 2:11-CV-01581-PMP-PAL).)  Therefore, this Order addresses only the claim construction issues pertinent to Silver State's patent infringement suit against Defendants Garmin International, Inc. and Garmin USA, Inc.

Patent), 7,343,165 (the '165 Patent), and 6,542,812 ('2812 Patent).  Silver State's patents generally cover various navigation processes and devices.

The '824 Patent is the parent patent to the '455 Patent, and this patent family "comprises Personal Communications Devices (PCDs), and traditional computer systems with GPS engines, routers, and other application programs to request, process, and transmit tagged, GPS encoded information."  (Decl. of Phillip Bennett in Support of Silver State's Consolidated Opening Claim Constr. Br. (Doc. #53-1) ["Bennett Decl."], Ex. A1 at col. 2, ll. 19-23.)  The '768 Patent is part of another patent family that covers a PCD with a digital camera that transmits images and GPS information.  (Id., Ex. A4 at col. 29-30.)  The '992 Patent, the '812 Patent, the '234 Patent, and the '039 Patent are part of another patent family and generally cover navigation PCDs that store user preference information and suggest goods or service providers based on the user preference information.  (Id., Ex. A6 at col. 13-16.)

Silver State filed a Complaint against Garmin, alleging Garmin sells navigation devices that infringe Silver State's patents.  (Compl. for Patent Infringement (Doc. #1).) Garmin filed an Answer, asserting that it does not directly or indirectly infringe Silver State's Patents, as well as various other defenses.  (Garmin's Answer to Silver State's Compl. for Patent Infringement and Countercl. (Doc. #21).)  Garmin also asserted counterclaims seeking declarations that the asserted patent claims are invalid and that Garmin does not infringe any valid asserted patent claim.  (Id.)  Silver State filed an Answer to Garmin's counterclaims, denying that Garmin is entitled to a declaration of invalidity or non-infringement.  (Pl.'s Reply to Countercls. of Garmin (Doc. #25).)

As required under Local Rule 16.1-15, the parties filed a Joint Claim Construction Chart providing the parties' agreed upon construction of some claim terms and each party's proposed construction of the disputed claim terms.  (Jt. Claim Construction and Prehearing Statement Pursuant to LR 16.1-15 (Doc. #47), Ex. A.)  Later, the Court granted

1   the parties' stipulation to dismiss all claims and counterclaims related to the '165 Patent.

2   (Order Granting Stip. (Doc. #49).)  The parties filed an Amended Joint Claim Construction

3   Chart reflecting the dismissal and further compromise as to certain claim construction

4   disputes.  (Not. of Am. Jt. Claim Construction Chart (Doc. #52).)  After the parties had

5   briefed the disputed claim constructions that remained, the Court granted the parties'

6   stipulation to dismiss all claims and counterclaims related to '2812 Patent.  (Order Granting

7   Stip. (Doc. #58).)  The seven Silver State patents that remain in this case are the '768

8   Patent, the '824 Patent, the '455 Patent, the '992 Patent, the '812 Patent, the '039 Patent,

9   and the '234 Patent.  The claim terms disputed by the parties are reflected in the parties'

10  Amended Disputed Claim Terms Summary Sheet.  (Am. Disputed Claim Terms Summary

11  Sheet (Doc. #73-1).)

12  **II.  CLAIM CONSTRUCTION LEGAL STANDARDS**

13          "The purpose of claim construction is to determine the meaning and scope of the

14  patent claims that the plaintiff alleges have been infringed."  Every Penny Counts, Inc. v.

15  Am. Express Co., 563 F.3d 1378, 1381 (Fed. Cir. 2009).  "When the parties raise an actual

16  dispute regarding the proper scope of these claims, the court, not the jury, must resolve that

17  dispute."  O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed.

18  Cir. 2008); Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996) (finding

19  patent claim construction is a question of law for the court).  "To ascertain the scope and

20  meaning of the asserted claims, [courts] look to the words of the claims themselves, the

21  specification, the prosecution history and, if necessary, any relevant extrinsic evidence."[2]

22  01 Communique Lab., Inc. v. LogMeIn, Inc., 687 F.3d 1292, 1295-96 (Fed. Cir. 2012)

23  (quotation omitted).

24  _____

25          [2]  The parties do not cite the prosecution history to support their proposed claim constructions.
    Therefore, the Court considers only the claim language, the specification, and any pertinent extrinsic
26  evidence.

1    The Court must begin by examining the claim language.  Acumed LLC v. Stryker

2    Corp., 483 F.3d 800, 805 (Fed. Cir. 2007); Every Penny Counts, 563 F.3d at 1381 ("The

3    construction that stays true to the claim language and most naturally aligns with the patent's

4    description of the invention will be, in the end, the correct construction." (quotation

5    omitted)).  "The words of a claim are generally given their ordinary and customary

6    meaning, which is the meaning that the term would have to a person of ordinary skill in the

7    art in question at the time of the invention."  Function Media, L.L.C. v. Google, Inc., 708

8    F.3d 1310, 1320 (Fed. Cir. 2013) (quotation omitted).  Considering how a person of

9    ordinary skill in the art would understand a claim term "is based on the well-settled

10   understanding that inventors are typically persons skilled in the field of the invention and

11   that patents are addressed to and intended to be read by others of skill in the pertinent art."

12   Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

13       "While certain terms may be at the center of the claim construction debate, the

14   context of the surrounding words of the claim also must be considered in determining the

15   ordinary and customary meaning of those terms."  ACTV, Inc. v. Walt Disney Co., 346

16   F.3d 1082, 1088 (Fed. Cir. 2003); Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d

17   1553, 1557 (Fed. Cir. 1995) (stating courts "must give meaning to all the words in [the]

18   claims").   Both asserted and unasserted claims of the patent can add meaning to a disputed

19   claim term, as claim terms normally are used consistently throughout the patent.  Phillips,

20   415 F.3d at 1314.  Additionally, where the patents at issue "derive from the same parent

21   application and share many common terms, [the court] must interpret the claims

22   consistently across all asserted patents."  NTP, Inc. v. Research In Motion, Ltd., 418 F.3d

23   1282, 1293 (Fed. Cir. 2005).  If the claim language is clear on its face, then consideration of

24   the other intrinsic evidence is limited "to determining if a deviation from the clear language

25   of the claims is specified."  Interactive Gift Exp., Inc. v. Compuserve Inc., 256 F.3d 1323,

26   1331 (Fed. Cir. 2001).

1    Furthermore, "claims must be read in view of the specification[] of which they

2    are a part." Phillips, 415 F.3d at 1315 (quotation omitted).  The specification can offer

3    "practically incontrovertible directions about claim meaning." Abbott Labs. v. Sandoz,

4    Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009).  For example, the patentee may act as its own

5    "lexicographer" and give a specialized definition of a claim term either explicitly or

6    implicitly, in which case the specification acts as a dictionary for the patent. Id.; Phillips,

7    415 F.3d at 1321.  "Likewise, inventors and applicants may intentionally disclaim, or

8    disavow, subject matter that would otherwise fall within the scope of the claim." Abbott

9    Labs., 566 F.3d at 1288.

10    "When consulting the specification to clarify the meaning of claim terms, courts

11    must take care not to import limitations into the claims from the specification." Id.

12    "[A]lthough the specification may well indicate that certain embodiments are preferred,

13    particular embodiments appearing in the specification will not be read into claims when the

14    claim language is broader than such embodiments." Tate Access Floors, Inc. v. Maxcess

15    Techs., Inc., 222 F.3d 958, 966 (Fed. Cir. 2000) (quotation omitted).  "By the same token,

16    the claims cannot enlarge what is patented beyond what the inventor has described as the

17    invention." Abbott Labs., 566 F.3d at 1288 (quotation omitted).

18    If the claim language is not clear after reviewing all intrinsic evidence, then the

19    Court may refer to extrinsic evidence such as expert testimony, inventor testimony,

20    dictionaries, learned treatises, and prior art not cited in the prosecution history. Zodiac Pool

21    Care, Inc. v. Hoffinger Indus., Inc., 206 F.3d 1408, 1414 (Fed. Cir. 2000).  "Relying on

22    extrinsic evidence to construe a claim is proper only when the claim language remains

23    genuinely ambiguous after consideration of the intrinsic evidence.  Such instances will

24    rarely, if ever, occur." Interactive Gift Exp., 256 F.3d at 1332 (internal quotation omitted).

25    ///

26    ///

5

III. DISCUSSION

Having considered, in accord with the standards above, the legal authority and arguments of counsel presented in the briefs and at the hearing conducted April 5, 2013, the Court construes the disputed patent claim terms as follows.

**A.  GPS stamp ('768 Patent)**

The parties dispute whether the term "GPS stamp" in the preamble of the '768 Patent Claim 2 is limiting, and if the term is limiting what the Court should construe it to mean.  (Bennett Decl., Ex. A4 at col. 30, ll. 1.)  Claim 2 claims:

> A digital camera with GPS stamp for use with a PCD device, comprising:
>
>> a housing containing an imaging device;
>>
>> a GPS receiver for determining a position of the digital camera including latitude and longitudinal information;
>>
>> a memory coupled to the imaging device and the GPS receiver, the memory storing an image formed by the imaging device and the position of the digital camera including the latitude and longitudinal information;
>>
>> communication means for transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system, wherein the central computer storage system provides the position of the digital camera including the latitude and longitudinal information and the image to other PCD devices upon request.

(Id. at col. 30, ll. 1-18.)

| Silver State's Proposed Construction | Garmin's Proposed Construction |
|---|---|
| Silver State submits the preamble of this claim is not limiting.<br><br>Alternatively: latitude and longitude location information from the Global Positioning System | latitude and longitude information placed within a picture image [in a manner similar to the placing of a time or date stamp] |

///

///

1    Silver State argues GPS stamp is not limiting because the body of Claim 2

2    defines a complete and functional apparatus and the preamble is merely a purpose or

3    intended use of the invention.  Silver State also argues GPS stamp is not cited later in

4    Claim 2, which is evidence the term is not limiting.  Alternatively, Silver State argues that if

5    the preamble is limiting and GPS stamp requires construction, that the specification

6    supports its proposed construction because the specification states that a GPS stamp

7    provides latitude and longitude information and is a convenient way of accurately placing

8    the location of images.  Silver State thus argues that although a GPS stamp may be placed

9    into an image, the term should not be limited to that definition.

10    Garmin argues GPS stamp is limiting because it is a key structural makeup of the

11    claimed invention.  However, Garmin states whether the preamble is limiting may be set

12    aside because Garmin agrees GPS stamp is accurately described in the Claim 2 term "an

13    image formed by the imaging device and the position of the digital camera including the

14    latitude and longitudinal information."  (Id. at col. 30, ll. 8-10.)  Garmin argues that the

15    specification describes GPS stamp as graphically made part of an image, and that it would

16    be called tagging if it was just location information associated with an image.  Thus,

17    Garmin concludes the Court should construe "an image formed by the imaging device and

18    the position of the digital camera including the latitude and longitudinal information" to

19    mean an "image is formed by (1) an imaging device and (2) the latitude and longitudinal

20    information."

21    Silver State replies that Garmin is improperly attempting to insert the requirement

22    that the location information for the image be made part of the image in its interpretation of

23    the new limitation at issue.  Silver State argues the more reasonable interpretation of the

24    limitation now at issue, looking at the full claim limitation, is that the claimed memory

25    stores (1) an image formed by the imaging device, and (2) the position of the digital camera,

26    including the latitude and longitudinal information.

"Generally, . . . the preamble does not limit the claims." Am. Med. Sys., Inc. v. Biolitec, Inc., 618 F.3d 1354, 1358 (Fed. Cir. 2010) (quotation omitted).  However, "a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002) (quotation omitted).  Thus, "if the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention," then the preamble is limiting. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006) (emphasis omitted).  However, "a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." Catalina Mktg., 289 F.3d at 808 (quotation omitted).  In other words, the preamble is not limiting if "deletion of the preamble phrase does not affect the structure or steps of the claimed invention." Id. at 809.

The preamble of Claim 2 is not limiting.  Claim 2 describes a structurally complete invention consisting of "a housing containing an imaging device, . . . a GPS receiver, . . . a memory, . . . [and] a communication means for transmitting the position of the digital camera."  (Bennett Decl., Ex. A4 at col. 30, ll. 1-18.)  The preamble does not give life, meaning, or vitality to the claimed invention, and deleting the preamble would not affect the structure and steps of the claimed invention.  Because the preamble is not limiting, the Court will not construe "GPS stamp."

However, the meaning of "the memory storing an image formed by the imaging device and the position of the digital camera" is ambiguous.  (Id. at col. 30, ll. 7-9.)  It could mean that the memory stores both an image and the position of the digital camera separately, or it could mean that the memory stores the image and the image is formed by the imaging device and the position of the digital camera.

The other claim limitations and the specification support the construction that the image and the position of the digital camera are separately and distinctly stored by the

memory.  The last limitation of Claim 2 states "communication means for transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system, wherein the central computer storage system provides the position of the digital camera including the latitude and longitudinal information and the image to other PCD devices upon request."  (Id. at col. 30, ll. 11-18.) The specification states "[t]he image formed by the digital camera is stored on memory contained within the PCD device, along with a GPS stamp."  (Id. at col. 23, ll. 22-24.)   By using the words "and" as well as "along with," the claim and specification suggests the image and the camera position may be separately stored.  See In re Hyatt, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts of English grammar.")

The specification also states "[t]he GPS stamp is placed within the picture image in a manner similar to the placing of a time or date stamp on a digital image picture." (Bennett Decl., Ex. A4 at col. 23, ll. 24-26.)  Thus, a preferred embodiment described in the specification is that the GPS stamp is placed within the image.  However, the Court will not read particular embodiments appearing in the specification into claims when the claim language is broader than such embodiments.  There is no claim language requiring that the image be formed and stored with the position.  Therefore, the Court will construe "the memory storing an image formed by the imaging device and the position of the digital camera" to include the memory storing both an image and the position of the digital camera separately.

**The Court finds "GPS stamp" is not limiting, and requires no construction. The Court further holds "the memory storing an image formed by the imaging device and the position of the digital camera, including the latitude and longitudinal information" means:** *the memory storing (1) an image formed by the imaging device, and (2) the position of the digital camera, including the latitude and longitudinal*

9

*information."*

### B. Communication means for transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system ('768 Patent)

The parties agree the term "communication means for transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system" in the '768 Patent Claim 2 contains "means-plus-function" language and must be construed under 35 U.S.C. § 112, ¶ 6.  (Bennett Decl., Ex. A4 at col. 30, ll. 11-14.)  However, the parties dispute how the Court should construe the function.

| Silver State's Proposed Construction | Garmin's Proposed Construction |
| --- | --- |
| Function: transmitting the position of the digital camera where an image was taken, including the latitude and longitudinal information and the image to a central computer storage system | Function: transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system |
| Structure: a wireless transceiver | Structure: a wireless transceiver |

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure . . . and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.  Construing a claim under section 112, paragraph 6 is a two step process.  "First, the court must identify the claimed function."  Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC, 677 F.3d 1361, 1367 (Fed. Cir. 2012).  The Court must construe the function "to include the limitations contained in the claim language, and only those limitations."  In re Aoyama, 656 F.3d 1293, 1296 (Fed. Cir. 2011) (quotation omitted).  "[A] court may not construe a means-plus-function limitation by adopting a function different from that explicitly recited in the claim."  JVW Enters., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1331 (Fed. Cir. 2005) (quotation omitted).  The

second step for construing claims under section 112, paragraph 6 is identifying "the corresponding structure in the specification that performs the recited function." <u>Chicago Bd. Options Exch.</u>, 677 F.3d at 1367.

Here, the parties agree that the structure is "a wireless transceiver." Therefore, the Court will adopt "a wireless transceiver" as the structure. Regarding the function, Silver State argues the phrase "where an image was taken" should be added to clarify that the position of the digital camera that is transmitting is that of the camera when a photograph is taken. However, the claim as written already is broad enough to include sending the location of the digital camera at the time an image was taken. Silver State's proposed construction would impose the limitation of transmitting only the location of the digital camera at the time an image is taken. The Court must not write limitations into the function that are not present in the claim language.

**The Court therefore holds "communication means for transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system" means:** *"a wireless transceiver transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system."*

**C.  Map data ('824 Patent) and map information ('455 Patent)**

The parties dispute the term "map data" in the '824 Patent Claim 8 and "map information" in the '455 Patent Claim 1. (Bennett Decl., Ex. A1 at col. 18, ll. 20-30; Ex. A3 at col. 17, ll. 14-21.) The '824 Patent and '455 Patent are in the same family, and the Court therefore must construe the claims consistently across both patents. <u>NTP, Inc.</u>, 418 F.3d at 1293.

| Silver State's Proposed Construction | Garmin's Proposed Construction |
|---|---|
| map data = location information | Plain and ordinary meaning |
| map information = location information | Plain and ordinary meaning |

Silver State argues that map data encompasses more than just the map, and includes data that relates to location in a more general sense, such as the location of restaurants, waypoints, or other locations of interest.  Silver State argues the '824 Patent specification, which is shared with the '455 Patent, demonstrates map data is information relating to location.  Silver State further submits two patents that are not at issue in this case which use the terms map data and map information to demonstrate that a person skilled in the art would construe map data broadly.  Silver State argues the Court must construe the term because of the parties' vastly differing interpretation of map data.

Garmin asserts that lay people know what map, data, and information mean, so the plain and ordinary meaning should control.  Specifically as to map data, Garmin agrees that maps are related to location, but argues the two are not coextensive.  Garmin also argues that Silver State's construction makes map data and non-map data the same because the patents expressly state non-map data concerns specific locations such as restaurants.  As to map information, Garmin argues map information is merely information used to generate a map, based on Claim 1's language "an interface device for requesting and receiving map information from digital map storage."  Garmin finally submits that the patentee's use of the term "map related information" for a patent in the same family as the '824 and '455 Patents shows the patentee knew how to claim information one degree abstracted from the actual map.

Silver State replies that whether a lay person would understand the meaning of map, data, and information in isolation is not the relevant inquiry; rather, the inquiry is how a person of ordinary skill in the art would understand the terms map data and map information.  Silver State argues the specification demonstrates that map data is the data stored in the system that pertains to location.  Silver State further contends that its definition of map data is not the same as non-map data because non-map data is non-location information, like a restaurant's name or the type of food it serves.  Silver State also argues

that if the patentee intended map information to mean map, the patentee would have used the word map only.  Silver State finally contends that although map related information is broader than map data or map information, this does not mean map data or map information should be narrowly construed to mean just the map.

The Court must ascertain what "map data" and "map information" mean in the context of this claimed invention to a person of ordinary skill in the field, not lay people.  Function Media, 708 F.3d at 1320.  Therefore, the Court rejects Garmin's argument that the terms have ordinary meanings and do not need construction.  The Court first construes map data and then construes map information.

1.  Map data ('824 Patent)

A general rule of patent construction is that different words are presumed to have different meanings.  Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1382 (Fed. Cir. 2008).  The '824 Patent's claims and specification use map, map data, non-map data, and location information separately, so these terms presumptively have different meanings.  (Bennett Decl., Ex. A1 at col. 4, ll. 37-44, col. 10, ll. 42-43, col. 18, ll. 20-31.)  The patentee also used the term "map related information" in a patent in the same family as the '824 and '455 Patents, a term which is presumed to mean something different than map data but in itself does not show that map data should be limited to mean the map.  (Bennett Decl., Ex. A5 at col. 14, ll. 54-55.)  The Court therefore rejects Garmin's construction that map data is a map, to the extent Garmin offers this construction.  The Court also rejects Silver State's construction that map data is location information because the specification uses both map data and location information, and describes location information as a subset of map data.  The specification states "[w]hen map data files are encoded with location information, the location information can be referred to as waypoints."  (Bennett Decl., Ex. A1 at col. 10, ll. 42-43.)  Thus, under ordinary grammar rules, the use of the word "when" means that map data files do not always, but may, include location information.

See In re Hyatt, 708 F.2d at 714; cf. Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1336 (Fed. Cir. 2008) (stating, in applying the doctrine of the last antecedent, that "words, in context, receive their meaning according to their placement in grammatical structure"). Therefore, map data is not just location information.

The Court further finds Silver State's proposed extrinsic evidence is of limited assistance in deciphering what map data means in the context of the patents at issue.  The Court may consider the extrinsic patents offered by Silver State to the extent they show how those skilled in the art use the term map data.  See ArcelorMittal France v. AK Steel Corp., 700 F.3d 1314, 1321 (Fed. Cir. 2012) ("Prior art can help to demonstrate how a disputed term is used by those skilled in the art." (quotation omitted)).  United States Patent No. 1,180,567 ("Geelan Patent") claims, in part, a navigation device that "is configured to change displaying a combination of the video image from the camera and the navigation directions to displaying the navigations with a selected portion of map data."  (Bennett Decl., Ex. B5 at col. 16, ll. 60-64.)  The Geelen Patent's specification states that memory units for the navigation device:

> may comprise map data 22.  This map data may be two dimensional map data (latitude and longitude), but may also comprise a third dimensions (height).  The map data may further comprise additional information such as information about petrol/gas stations, points of interest.  The map data may also comprise information about the shape of buildings and objects along the road.

(Id. at col. 5, ll. 61-67.)  Under the Geelen Patent, map data includes "information about petrol/gas station, points of interest," which is broad enough to include hours of operation and yellow page entries.  However, the '824 Patent defines hours of operation and yellow page entries as non-map data.  (Bennett Decl., Ex. A1 at col. 18, ll. 34-36, 43-45.)  The Geelen Patent thus does not assist in determining what map data means in the '824 Patent because the Geelan Patent and the '824 Patent define map data differently.

///

The Court will construe map data by reference to the parameters of the term as illustrated by the claim language and specification.  The '824 Patent Claim 8 claims a method for "storing map data for geographic areas and non-map data, with the non-map data in linked data fields concerning specific locations within the geographic areas."  (<u>Id.</u> at col. 18, ll.  20-22.)  Thus, map data is related to geographic areas, and non-map data is linked to locations in the geographic areas.  Furthermore, Claim 14, which is dependent on Claim 8, states map data may include "latitude and longitude data."  (<u>Id.</u> at col. 18, ll. 46-48.)  Thus, map data may include, but does not inherently include, latitude and longitude data.

The specification further provides that "some devices have map data stored in memory and a display for showing the device position with reference to the map data," but that "[o]ther devices have no underlying map data base [and] show only the geographic coordinates of the device's location."  (<u>Id.</u> at col. 1, ll. 31-37.)  The specification further states:

> The Location page is illustrated in FIG. 8. The Location page includes a GPS map 219 (latitude and longitude encoded coordinate pairs).  The sample page shown is an encoded map location of the selected waypoint.  The map displayed could be from on-board memory or sent by other third parties by way of communication links to the PCD. When map data files are encoded with location information, the location information can be referred to as waypoints.

(<u>Id.</u> at col. 10, ll. 35-43.)

Therefore, because a device can have no map data and still be able to display geographic coordinates, map data is not equivalent to geographic coordinates.  Furthermore, because map data may be encoded with location information, map data may include location information.  And because location information when encoded into map data is a waypoint, map data is something distinct from, but may contain, location information and waypoints.  This is consistent with Figure 8, which shows a display of a map containing numbered waypoints at 802, 805, and 807.

The phrase "some devices have map data stored in memory and a display for showing the device position with reference to the map data," taken together with the above excerpt describing Figure 8 that states the map could come from the on-board memory, indicates map data is data from which a map is constructed.  This is consistent with map data sometimes including latitude and longitude data, location information, and waypoints.

Map data is further understood by what it does not include.  Claims 9 through 13 in the '824 Patent are dependent on Claim 8 and refer to "non-map data."  (Id. at col. 18, ll. 31-45.)  Claims 9 through 13 state non-map data can include restaurant listings, hours of operation, traffic reports, weather reports, and yellow page entries.  (Id.)

After considering the claim language, specification, and extrinsic evidence, map data is best described as data from which a map is constructed, which can include latitude and longitude data, location information, and waypoints.  However, map data does not include information such as restaurant listings, hours of operation, traffic reports, weather reports, and yellow page entries.

**The Court therefore adopts the following construction of the claim term "map data":** *"data from which a map is constructed, which may include latitude and longitude data, location information, and waypoints, but which does not include information such as restaurant listings, hours of operation, traffic reports, weather reports, or yellow page entries."*

2.  Map information ('455 Patent)

The '455 Patent claims do not contain the term "map data."  Instead, the patentee used the phrase "map information."  Therefore, the Court presumes map information means something different than map data.  Helmsderfer, 527 F.3d at 1382.

The '455 Patent Claim 1 claims an information apparatus comprising, in part, "an interface device for requesting and receiving map information from digital map storage separate from the data provider."  (Bennett Decl., Ex. A3 at col. 17, ll. 14-16.)  Another

element of Claim 1 is:

> a display for showing thereon map information received from the digital map storage a location of the apparatus, and traffic information resulting from processing the responsive data, the shown map information including a plurality of waypoints indicating corresponding locations of goods or service providers on a map . . . .

(Id. at col 17, ll. 14-21, col. 18, l. 1.)  Thus, map information, like map data, includes waypoints, and does not include traffic information.

The specification uses map information and map data interchangeably.  The specification states some GPS capable devices "have map data stored in memory and a display for showing the device position with reference to the map data," but "[o]ther devices have no underlying map data base for reference."  (Id. at col. 1, ll. 40-44.)  In the next paragraph, the specification states:

> GPS receiver devices with map display capability may store the map information on computer diskettes, CD-ROM's, or other computer memory storage devices.  The device location may then be displayed on a display terminal with reference to a map stored in the computer memory storage device.  The available quantity of map data, however, can overwhelm the memory capability of easily portable computer devices.  This problem is exacerbated when additional information is included and linked with the map data.

(Id. at col. 1, ll. 52-60.)  The specification further states:

> The database provider receives digital requests for map information or other data regarding a geographic area.  The data provider collects map data and other data and tags the other data to the map data and maintains the map and location tagged data in a database.

(Id. at col. 15, ll. 40-44.)[3]  Furthermore, the terms data and information are similar concepts.

---

[3]   United States Patent No. 5,699,255 (the '255 Patent), which Silver State offers to show how others skilled in the art would define map information, states in its specification that:

> Additionally, the present embodiment of the invention provides map information of varying resolution and detail.  For purposes of the present invention, varying resolution means varying scale and/or detail.  For example, a vacationer can elect to have detailed map information displaying multiple points of interest, theater sites, intricate street

1  Because map data and map information include waypoints, the specification uses the terms

2  map data and map information interchangeably, and the words information and data are

3  similar concepts, the Court finds map data and map information mean the same thing.

4      **The Court therefore holds "map information" means:** ***data from which a***

5  ***map is constructed, which may include longitude and latitude data, location information,***

6  ***and waypoints, but which does not include information such as restaurant listings, hours***

7  ***of operation, traffic reports, weather reports, or yellow page entries."***

8      **D. Receiving a request from a user for a specified maximum number of listings ('824 Patent)**

9

10      The parties dispute the term "receiving a request from a user for a specified

11  maximum number of listings" in the '824 Patent Claim 8.  (Bennett Decl., Ex. A1 at col. 18,

12  ll. 24-25.)

| Silver State's Proposed Construction | Garmin's Proposed Construction |
|---|---|
| specified = pre-set or selected | receiving a request from a user for a user-specified maximum number of listings |

16      Silver State argues that only the word "specified" requires construction to clarify

17  that Claim 8 encompasses both a pre-set number of listings or a user-specified number of

18  listings.  Silver State contends that Garmin's restriction that the request be user-specified is

19  improper because neither the claim language nor the specification support this limitation.

20      Garmin responds that the plain language of Claim 8 mandates that the specified

21

22  _____

23      details, and the like transmitted to the vacationer's in-vehicle navigation system.  On
        the other hand, a traveling salesperson seeking the most expedient route to a client's
24      place of business can elect to have only rudimentary street directions transmitted from
        the base station to the salesperson's in-vehicle navigation system.

25  (Bennett Decl., Ex. B6, col. 2, ll. 34-45.)  The '255 Patent's description of map information thus would
26  include data from which a map is constructed and waypoints, and thus is consistent with this Court's
    construction of map information.

number come from the user.  Garmin further argues that the only embodiment in the specification provides that the user specify the maximum number of listings.

Silver State replies that the patentee wrote Claim 8 without defining who or what must specify the maximum number of listings.  Silver State thus concludes Claim 8 could encompass both user-specified and pre-set number of listings.

The plain and ordinary meaning of this Claim 8 term is readily apparent and requires no construction.  Claim 8 as written is broad enough to encompass both user-specified and pre-set number of listings.  A construction that the specified maximum number of listings be provided by the user would impermissibly read a limitation into Claim 8 that is not present in the claim language or warranted by the specification.  Although Figure 15 in the specification shows an embodiment where the user inputs the maximum number of listings, the Court cannot read this limitation into Claim 8.  (Bennett Decl., Ex. A1 at fig. 15); Tate Access Floors, 222 F.3d at 966 (stating that even if the specification indicates "that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into claims when the claim language is broader than such embodiments." (quotation omitted)).

**The Court therefore holds the plain and ordinary meaning of "receiving a request from a user for a specified maximum number of listings" controls and the Court need not construe the term.**

### E. A request for data concerning traffic pertaining to an area ('455 Patent)

The parties dispute the term "a request for data concerning traffic pertaining to an area" in the '455 Patent Claim 1.  (Bennett Decl., Ex. A3 at col. 17, ll. 9-10.)

| **Silver State** | **Garmin** |
|---|---|
| Plain and ordinary meaning | a request for traffic data that specifies an area |

///

Silver State contends Garmin's construction improperly narrows Claim 1 because the request itself does not need to specify a particular area.  Silver State further argues none of the exceptions to applying the plain and ordinary meaning apply to this Claim 1 term, so the plain and ordinary meaning should control.

Garmin argues this term requires construction to clarify that the request specifies an area, because requesting traffic data or maps without specifying the area you are interested in makes no sense.  Garmin further argues that the specification supports its construction because whenever the '455 Patent describes requests for traffic data, the request always specifies an area.  Garmin also contends the Court must address this issue because Silver State's infringement contentions show Silver State is reading the "pertaining to an area" and "concerning an area" language out of Claim 1.

On Reply, Silver State reiterates its argument that the request itself does not need to specify an area.  To support this, Silver State provides the example of a device that receives traffic information over an FM radio channel.  According to Silver State, when that device sends a request for traffic data, it would not need to specify an area because the traffic information would be limited to that being broadcast over the FM radio channel, and thus the traffic information would be limited to the area in which the device is located.  Silver State finally argues that although the specification describes a user interface that permits a user to specify a map area when making a database request, the specification also describes a situation where the traffic information for a small town may be sent and received via radio waves without the request specifying an area.

Claim 1 claims an information apparatus comprising, among other things, "a processing element configured to form a request for data concerning traffic pertaining to an area, and to process responsive data to the request, the responsive data being included in traffic data received from a data provider."  (Bennett Decl., Ex. A3 at col. 17, ll. 9-10.)  The specification states:

> In some areas the information would be sent and received by way of a
> Local Area Broadcast via radio frequency signals to each home, car or
> PCD within a reception areas . . . .  This would be advantageous to
> small towns with little information available for travelers, but which
> have an interest in providing up-to-date traffic, weather and travel advisories to benefit the

(Id. at col. 3, ll. 35-45.)  Thus, a device could be set up to receive only local radio

broadcasts, so that when the device requests traffic information, the only traffic information

available would be the traffic data for the area in which the device is situated.  Therefore,

the Court will not read Garmin's limitation into the claim term.

**The Court therefore holds that "a request for data concerning traffic pertaining to an area" requires no further construction except to clarify that the request does not need to specify an area.**

**F.  The waypoints being selectable by a user in an order ('455 Patent)**

Originally, the parties agreed the proper construction of the term "waypoints"

was "identified locations on a map."  (Notice of Second Am. Joint Claim Construction

Chart (Doc. #60), App. A at 13.)  However, the parties dispute the term "the waypoints

being selectable by a user in an order" in the '455 Patent Claim 1.  (Bennett Decl., Ex. A3

at col. 18, ll. 1-2.)

| Silver State's Proposed Construction | Garmin's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | multiple waypoints are displayed on the map display and a user may select the multiple waypoints from the display in an order |

Silver State contends Claim 1 states that the displayed map information includes

waypoints, but does not require that the waypoints themselves be displayed on the map.

Silver State thus argues this term requires no construction, and Garmin's construction

improperly adds the limitation that the waypoints be displayed on the map display.

Garmin responds that Silver State's contention that the waypoints do not need to

be displayed on the map ignores the parties' agreed upon construction of waypoints, which

21

is that waypoints are identified locations on a map.  Garmin further argues Silver State's

argument is at odds with the claim language, because Claim 1 states waypoints must be

displayed on a map.

Silver State replies that Claim 1 allows for the waypoints to be displayed in list

form or to be displayed on a map.  Silver State further argues that the agreed upon

definition of waypoints does not state that waypoints may be displayed only on a map, and

therefore the definition of waypoints does not foreclose waypoints from being displayed in

a format other than on a map.  At the claim construction hearing, Silver State contended that

it does not agree with Garmin's construction of the parties' agreed construction of

waypoint, and provided the alternative construction of waypoints meaning "identifiable

locations of interest."

Claim 1 claims, in part,

> a display for showing thereon map information received from the digital map storage a location of the apparatus, and traffic information resulting from processing the responsive data, the shown map information including a plurality of waypoints indicating corresponding locations of goods or service providers on a map, the waypoints being selectable by a user in an order, wherein the selected waypoints are processed and reordered to [s]uggest to the user a route to the respective locations of goods or service providers corresponding to the reordered waypoints.

(Id. at col. 17, ll. 17-21, col. 18, ll. 1-6.)  The Court has construed map information the same

as map data, that is "data from which a map is constructed, which may include longitude

and latitude data, location information, and waypoints, but which does not include

information such as restaurant listings, hours of operation, traffic reports, weather reports,

or yellow page entries."  Nothing in this definition necessarily requires map information to

be shown upon a map.  That the waypoints are "shown map information" thus does not

mean that the waypoints must be displayed on a map.

The specification provides that "[w]hen map data files are encoded with location

information, the location information can be referred to as waypoints."  (Id. at col. 10,

ll. 34-36.)  Map data is interchangeable with map information.  Thus, waypoints are created by placing location information into map data or map information, but this does not mean that waypoints must be displayed on a map.

The specification further states that once a device has obtained the data requested, the user may "edit the device's entire data base and decide a sequence for navigating to the locations listed in the various menus as waypoints.  Thus users of the PCD can decide to navigate using the GPS features of the PCD and select certain waypoints and the order in which to proceed." (Id. at col. 14, ll. 21-25.)  This indicates that waypoints may be provided in list format.  Additionally, Figure 15, which is an information request page for a PCD, shows a list of waypoints at 151.  (Id. at col. 6, ll. 48-49.)  Therefore, the specification supports that waypoints may be displayed in list format.

The specification demonstrates that waypoints also may be displayed on a map.  The specification states "[s]ome GPS receiver devices can plot and display a trail of waypoints and store this trail for future retrieval." (Id. at col. 1, ll. 43-48.)  Figure 8 demonstrates this concept, as it shows waypoints on a map, specifically depicting a waypoint at 802 as a numbered location along the route of the device.  (Id. at col. 10, ll. 46-48.)  Figure 22 shows "a typical GPS encoded map with waypoints locating restaurants," and further shows waypoints may be shown on a map.  (Id. at col. 6, ll. 59-60.)  Furthermore, Figure 20, which is "a typical listing downloaded from a data provider," shows a list of restaurants, and each restaurant has a waypoint number.  (Id. at col. 6, ll. 58-59.)  The specification states that Figure 20 "illustrates a list of GPS encoded data for a restaurant listing of restaurants in a requested area.  This list may have been furnished by third parties or a data provider.  The PCD has stored this information in digital format and is displayed on a GEO coded map, GIFF map or any other map the PCD stored in memory or receives from a third party or data provider." (Id. at col. 15, ll. 57-63.)  Thus, under the claim language and the specification, waypoints may be displayed on a map, as well as in

list format.

The Court therefore holds no further construction of "the waypoints being selectable by a user in an order" is required except to clarify that waypoints do not need to be displayed on a map.

### G.  User Preference Claim Limitations ('992 Patent, '812 Patent, '039 Patent)

The parties dispute "user preference information" in '992 Patent Claim 23 and "user preference data" in the '812 Patent Claim 10.  (Bennet Decl., Ex A6 at col. 15, ll. 8-12; Ex. A7 at col. 14, ll. 29-31.)  The parties also dispute "searching a database based at least on the user preference information and the sensed location to suggest one or more goods or service providers" in '992 Patent Claim 23.  (Bennett Decl., Ex. A6 at col. 15, ll. 10-12.)  The parties further dispute "suggesting a plurality of points of interest based on the user preference data" in '812 Patent Claim 1.  (Bennett Decl., Ex. A7 at col. 13, ll. 57-58.)  Finally, the parties dispute "data concerning points of interest preferred by a user" and "preferred points of interest" in '039 Patent Claim 16.  (Bennett Decl., Ex A9 at col. 14, ll. 42-55.)

The '992 Patent, the '812 Patent, and the '039 Patent are in the same family and share a common specification.  The Court therefore must consistently construe the claims across these three patents.  NTP, Inc., 418 F.3d at 1293.

| Silver State's Proposed Construction | Garmin's Proposed Construction |
|---|---|
| user preference information ('992 patent)/ user preference data ('812 patent)  = <br><br>information concerning points of interest preferred by a user | user preference information ('992 patent)/ user preference data ('812 patent)  = <br><br>user-preferred types of goods or service providers |

| | |
|---|---|
| searching a database based at least on the user preference information and the sensed location to suggest one or more goods or service providers ('992 Patent)=<br><br>Plain and ordinary meaning (with Silver State's proposed construction of "user preference information") | searching a database based at least on the user preference information and the sensed location to suggest one or more goods or service providers ('992 Patent) =<br><br>filtering points of interest in a database in accordance with (1) [user-preferred types of goods or service providers] and (2) the current position of the user, and providing these filtered results to the user as suggestions |
| suggest a plurality of points of interest based on the user preference data ('812 Patent) =<br><br>Plain and ordinary meaning (with Silver State's proposed construction of "user preference data") | suggest a plurality of points of interest based on the user preference data ('812 Patent) =<br><br>filtering points of interest in a database of goods and service providers in accordance with (1) [user-preferred types of goods or service providers] and (2) the current position of the user, and providing these filtered results to the user as suggestions |
| data concerning points of interest preferred by a user ('039 patent) =<br><br>Plain and ordinary meaning | data concerning points of interest preferred by a user ('039 patent) =<br><br>data concerning user-preferred types of goods or service providers |
| preferred points of interest ('039 patent) =<br><br>Plain and ordinary meaning | preferred points of interest ('039 patent) =<br><br>points of interest filtered in accordance with the user-preferred types of goods and services |

Silver State argues Garmin's proposed constructions should be rejected because adding in the concept of types of goods and service providers would improperly limit the claimed invention. According to Silver State, the specification states user preference information and data can include actual goods and service providers. Silver State contends the specification provides an example of a navigation device receiving user preference data such as specific favorite restaurants, stores, and other goods and service providers, showing the user preference information is not limited to types of goods and service providers. Silver State argues limiting data concerning points of interest preferred by a user and

preferred points of interest to types of goods and service providers also is improper.  Silver State further contends Garmin's proposed constructions for "searching a database . . ." and "suggest a plurality of points . . ." improperly add the concept of "filtering" which does not appear in the claim or the specification, and therefore should be rejected.

Garmin argues that the concept described in the asserted patents—the server determining the user's favorites based on stated preferences and location—is not the same as the industry concept of "saving favorites," where the user enters specific locations to store as favorites.  Garmin asserts that the patents at issue do not describe the concept of user-entered favorites.  Garmin argues its proposed construction of the user preference terms is correct and not improperly limiting because the patent is clear that the user enters user-preferred types of goods and service providers and then the database is searched to suggest one or more specific goods or service providers.  Specifically, for the final two disputed user preference terms, Garmin argues that the parties dispute the meaning of suggesting goods or service providers.  Garmin argues it interprets suggesting goods or service providers to mean the system identifies locations that comport with the user's preferences and then propose these locations to the user.  Garmin contends that Silver State's construction of user preference information/data would mean the system simply parrots back specific locations the user has previously stored.

Silver State responds that the specification explicitly describes the concept of a user entering favorite points of interest.  Silver State further contends that Garmin has not argued the patentee acted as his own lexicographer or that there is anything in the specification that evidences a clear disavowal of claim scope.  Silver State thus concludes that Garmin is improperly attempting to limit the claim to a specific embodiment present in the specification.

The Court first considers user preference information and user preference data. Different terms are presumed to have different meanings.  <u>Helmsderfer</u>, 527 F.3d at 1382.

However, although the parties dispute the proper construction, the parties ultimately agree that user preference information and user preference data share a common meaning. The '812 and '992 Patents' shared specification, along with the claim language, indicate that user preference information is the same as user preference data. Thus, the Court finds user preference information and user preference data have the same meaning.

The '992 Patent Claim 23 claims a navigation apparatus comprising, among other things, "an interface for receiving user preference information" and "a processor for searching a database based at least on the user preference information and the sensed location to suggest one or more goods or service providers." (Bennett Decl., Ex. A6 at col. 15, ll. 8, 10-12.) The '812 Patent Claim 10 claims a navigation system comprising, among other elements, "a device for receiving user preference data" and "a processor configured to suggest a plurality of points of interest based on the user preference data." (Bennett Decl., Ex. A7 at col. 14, ll. 29-32.)

The phrases user preference information and user preference data do not appear in the specification. The specification provides that the invention allows the user to create a navigation route to "perform certain tasks enroute or at the destination, which may include purchasing business supplies, shopping for gifts, dining, obtaining entertainments, etc." (Bennett Decl., Ex. A6 at col. 4, ll. 55-63; Ex. A7 at col. 14, ll. 59-67.) To accomplish this, the navigator, "in accordance with the invention[,] allows for storage of user profiles including user preferences such as preferred types of restaurants, shops, entertainments, etc." (Bennett Decl., Ex. A6 at col. 4, ll. 60-63; Ex. A7 at col. 4, ll. 64-67.) This indicates user preference information and data includes types of goods and service providers, but the use of the phrase "such as" preceding "preferred types of restaurants, shops, entertainments, etc." indicates the specification did not limit user preference information and data to types of goods and service providers.

///

27

The specification further describes an example of an embodiment where a processor in the navigation device causes the navigation device "to generate a request to the navigation server for the map and related information in section 513 and personal favorites in section 517," as exemplified in Figure 4.  (Bennett Decl., Ex. A6 at col. 7, ll. 3-7; Ex. A7 at col., ll. 6-10.)  This request "contains the personal data in section [503 and] personal profile in section 507," among other things.  (Bennett Decl., Ex. A6 at col. 7, ll. 7-8; Ex. A7 col. 7, ll. 10-11.)  Upon receiving the request, "based on the personal data, personal profile and GPS data therein, [the navigation server] determines the user's personal favorites, e.g. favorite personal facilities and events."  (Bennett Decl., Ex. A6 at col. 8, ll. 26-30; Ex. A7 at col. 8, ll. 29-35; see also Bennett Decl., Ex. A6 at col. 6, ll. 61-64 ("section 517 contains personal favorites which are determined based on the personal data in section 503, personal profile in section 507 and GPS data in section 511"); Ex. A7 at col. 6, ll. 64-67 (containing similar language).)  Figure 6 illustrates a personal favorites list, which is a list of specific goods and service providers.  (Bennett Decl., Ex. A6 at col. 8, ll. 56-61; Ex. A7 at col. 8, 61-64.)  Taken together, this demonstrates the element in Claim 23 that a processor search a database based at least on the user preference information to suggest one or more goods or service providers.  Therefore, "personal data" and/or "personal profiles" could be included in user preference information.

"Personal data" includes a user's "name, age, sex, marital status, occupation, city, education, religion and number of children."  (Bennett Decl., Ex. A6 at col. 6, ll. 6-9; Ex. A7 at col. 6, ll. 9-12.)  Personal data is not user preference information or data, but rather demographic facts about the user.  However, a "personal profile" is user preference information or data.  As shown in Figure 3, the user creates a personal profile by choosing preferences from different categories such as restaurants, shopping, music, entertainment, recreation, sports, and services.  (Bennett Decl., Ex. A6 at col. 6, ll. 22-34; Ex. A7 at col. 6, ll. 25-27.)  For example, the user can select country and jazz under the music category as

music preferences.  (Bennett Decl., Ex. A6 at col. 6, ll. 28-30; Ex. A7 at col. 6, ll. 31-33.)  Thus, the specification provides that the user can enter user preference information and data in the form of preferred types of goods and service providers to create a user profile, and the user profile can then be used to generate a user's personal favorites list.

However, that the specification provides the example that user preference information and data includes a user profile generated from the user's preferred types of goods and service providers does not mean that user preference information and data excludes specific points of interest preferred by a user.  Nowhere in the specification is the concept of user preference information and data limited to types of goods and service providers.  Rather, types of goods and service providers is given as an example of user preference information and data.  The claim language also does not limit the user preference information to types of goods and service providers.  Thus, user preference information and data could include the user entering preferred goods or service providers into the navigation device, and the processor in the navigation device suggesting one or more goods or service providers based on the preferred goods or service providers and the user's locations.  The Court will not limit user preference information and data to types of goods and service providers and thus the Court rejects Garmin's proposed construction.

Because user preference information and data are not limited to types of goods and service providers, the disputed claim terms "searching a database based at least on the user preference information and the sensed location to suggest one or more goods or service providers" and "suggesting a plurality of points of interest based on the user preference data" are not limited to types of goods and service providers.  (Bennett Decl., Ex. A6 at col. 15, ll. 10-12; Ex. A7 at col. 13, ll. 57-58.)  Furthermore, the terms searching a database, suggest one or more goods or service providers, and suggest a plurality of points of interest have clear meanings and require no further construction.  The Court therefore rejects Garmin's proposal to construe the claim terms to mean "filtering."

The remaining user preference terms in dispute, "data concerning points of interest preferred by a user" and "preferred points of interest," also do not require construction.  (Bennett Decl., Ex A9 at col. 14, ll. 42-55.)  A plain reading of these claim terms shows preferred points of interest are at issue, not preferred types of goods and service providers.  The Court further rejects Garmin's proposed construction of preferred points of interest which would add a filtering requirement, as the claim language does not contain, and the specification does not support, this limitation.

**In conclusion, the Court finds none of the user preference claim limitations are limited to types of goods and service providers.  The Court therefore finds the user preference claim limitations require no further construction.**

**I.  '234 Patent**

The parties dispute the term "when it is determined that the coverage area is different from one or more areas in the navigation coverage defined at least by the origination and destination, the processing unit searches the database for selected traffic information specific to the one or more areas, and wherein a route to the destination is planned, taking into consideration at least traffic conditions derived from the selected traffic information" in the '234 Patent Claim 17.  (Bennett Decl., Ex. A8 at col. 15, ll. 5-13.)

| Silver State's Proposed Construction | Garmin's Proposed Construction |
|---|---|
| coverage area = geographic area in the vicinity of the user<br><br>navigation coverage = geographic areas over which the navigation system operates | when it is determined that the stored map and related information does not cover the origination and/or destination address,<br><br>the processing unit obtains fresh traffic information that covers at least the origination and destination,<br><br>and the requested route is planned taking into consideration at least traffic conditions for the entire route derived from the obtained fresh traffic information |

///

Silver State argues that only the terms "coverage area" and "navigation coverage" require construction.  Silver State argues the claim states that coverage area includes the location of the vehicle, and therefore coverage area is the geographic area in the vicinity of the user.  Silver State argues that coverage area is a subset of the total navigation coverage provided by the navigation system, and therefore navigation coverage is the geographic areas over which the navigation system operates.  Silver State argues Garmin's rewrite impermissibly adds the concept "obtaining fresh traffic information" to limit the claim, because the claim only requires "a database formed to store traffic information."

Garmin responds that it agrees that navigation coverage is the full area over which the navigation system operates.  However, Garmin does not agree with Silver State's proposed construction of coverage area.  Garmin argues coverage area is something more concrete because the claim requires an assessment of whether the coverage area includes the origin and destination of the user's trip.  Garmin argues coverage area means the area for which the navigation device has map and related information coverage.  Garmin asserts the rest of the claim limitation is virtually incomprehensible, and its proposed construction attempts to break the limitation into parts and rephrase it in a manner more easily understood by a juror.  Garmin further argues that the specification uses the word "fresh" to describe when the navigation device receives new data, and therefore this term is consistent with the meaning of Claim 17.

Silver State replies that Claim 17 includes a database that can store traffic information, and Dependent Claim 23, which is not asserted, adds the limitation that the traffic database is external to the vehicle.  Silver State asserts Garmin's construction would require the navigation device of Claim 17 to have access to an external database, which would impermissibly read the limitation of Claim 23 into Claim 17.  Silver State further argues that Garmin's rewrite is a validity argument which Garmin waived by not including

it in its Local Rule 16.1-8 disclosures.  Silver State finally argues that Claim 17 covers both

a device that stores traffic information and one that retrieves fresh traffic information, and

thus the claim should not be limited to the second type of navigation system.

Claim 17 claims "a navigation system for a user traveling in a vehicle,

comprising":

> a database formed to store traffic information for extraction thereof
> with respect to areas;
>
> a processing unit for searching the database for traffic information
> specific to a coverage area including the location of the vehicle; and
>
> an interface for receiving a request for planning a route from an
> origination to a destination, wherein when it is determined that the
> coverage area is different from one or more areas in navigation
> coverage defined at least by the origination and the destination, the
> processing unit searches the database for selected traffic information
> specific to the one or more areas, and wherein a route to the destination
> is planned, taking into consideration at least traffic conditions derived
> from the selected traffic information.

(Bennett Decl, Ex. A8 at col. 14, ll. 64-67, col. 15, ll. 1-13.)  The third limitation in Claim

17 describes a situation where the navigation system determines that the user-entered

origination and destination are not included in the coverage area that includes the user's

current location.  However, the user's origination and destination are contained in one or

more areas of the navigation coverage.  The processor then searches the database for traffic

information specific to the one or more areas in the navigation coverage that contain the

origination and destination.  Finally, the navigation system takes into account the traffic

conditions derived from the selected traffic information in planning the route.

This is consistent with the specification, which states:

> After learning the origination address and destination address
> responsive to queries 903 and 905, respectively, processor 103
> analyzes the map and related information stored in section 513 of
> record 400.  Specifically, processor 103 determines whether the
> navigation coverage based on the map layer corresponding to
> automobile travel in this instance, includes the origination and
> destination addresses, and whether the stored map and related

information is fresh, as indicated at step 1003 in FIG. 10.  If the navigation coverage includes the origination and destination addresses in question, and the period elapsed from the time stamp of the stored map and related information does not exceed a predetermined period (i.e., the stored map and related information is fresh), based on such map and related information, processor 103 at step 1006 selects the route from the origination address to the destination address which is the most time-efficient, i.e., fastest by automobile in this instance, taking into account the relevant weather, traffic, and road conditions along the selected route, together with any roadblocks set up by the user in a manner to be described.

(Bennett Decl., Ex A8 at col. 10, ll. 27-46.)  This also is consistent with Figure 10, which demonstrates that if the "navigation coverage include[s] origination and destination addresses," the navigation system "select[s] the most time efficient route, taking into account relevant weather, traffic, and road conditions," without consulting an external navigation server.  Therefore, Garmin's proposed construction, to the extent it rewrites this claim limitation to clarify the meaning for the jury, is rejected.

While the specification provides that the navigation system may obtain fresh traffic information, this is a limitation not present in the claim language.  Rather, the claim language requires that the processor retrieve traffic information from the database when the origination and destination are not included in the coverage area but are included in the navigation coverage.  Garmin's proposed construction therefore also is rejected as importing a limitation from the specification that is not present in the claim.

As to navigation coverage, the parties agree that the proper construction of navigation coverage is the geographic area over which the navigation system operates.  The Court will therefore adopt that construction.

As to coverage area, Silver State's proposed construction with modification is appropriate.  The best guidance from Claim 17 is that coverage area includes the location of the vehicle.  The term coverage area does not appear in the specification.  And given the context of the rest of the claim, a coverage area is a subset of the navigation coverage.  The coverage area is therefore best defined as a geographic area in which the vehicle is located,

which is a subset of the geographic area over which the navigation system operates.

The Court therefore holds "navigation coverage" means: *"the geographic area over which the navigation system operates."*

The Court further holds "coverage area" means: *"the geographic area that the vehicle is located in, which is a subset of the geographic area over which the navigation system operates."*

## III.  CONCLUSION

IT IS THEREFORE ORDERED that the disputed claim terms in United States Patent Nos. 6,525,768; 6,529,824; 7,702,455; 7,522,992; 7,593,812; 7,739,039; and 7,650,234 are construed as follows:

| United States Patent No. 6,525,768 | |
|---|---|
| GPS stamp | Not limiting, no further construction required |
| The memory storing an image formed by the imaging device and the position of the digital camera, including the latitude and longitudinal information | The memory storing (1) an image formed by the imaging device, and (2) the position of the digital camera, including the latitude and longitudinal information |
| Communication means for transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system | A wireless transceiver transmitting the position of the digital camera including the latitude and longitudinal information and the image to a central computer storage system |
| United States Patent No. 6,529,824 | |
| Map data | Data from which a map is constructed, which may include longitude and latitude data, location information, and waypoints, but which does not include information such as restaurant listings, hours of operation, traffic reports, weather reports, or yellow page entries |

| Receiving a request from a user for a specified maximum number of listings | No further construction required |
|---|---|
| United States Patent No. 7,702,455 ||
| A request for data concerning traffic pertaining to an area | No further construction required except to clarify that the request does not need to specify an area |
| Map information | Data from which a map is constructed, which may include longitude and latitude data, location information, and waypoints, but which does not include information such as restaurant listings, hours of operation, traffic reports, weather reports, or yellow page entries |
| Waypoints being selectable by a user in an order | No further construction required except to clarify that waypoints do not need to be displayed on a map |
| United States Patent No. 7,522,992 ||
| User preference information | No further construction required |
| Searching a database based at least on the user preference information and the sensed location to suggest one or more goods or service providers | No further construction required |
| United States Patent No. 7,593,812 ||
| User preference data | No further construction required |
| Suggest a plurality of points of interest based on the user preference data | No further construction required |
| United States Patent No. 7,739,039 ||
| Data concerning points of interest preferred by a user | No further construction required |
| Preferred points of interest | No further construction required |
| United States Patent No. 7,650,234 ||
| Navigation coverage | The geographic area over which the navigation system operates |

| Coverage area | The geographic area that the vehicle is located in, which is a subset of the geographic area over which the navigation system operates |
|---|---|
| When it is determined that the coverage area is different from one or more areas in the navigation coverage defined at least by the origination and destination, the processing unit searches the database for selected traffic information specific to the one or more areas, and wherein a route to the destination is planned, taking into consideration at least traffic conditions derived from the selected traffic information | No further construction required |

DATED:  August 13, 2013

_____
PHILIP M. PRO
United States District Judge

36