UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| SILVER STATE INTELLECTUAL TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | 2:11-CV-01578-PMP-PAL |
| v. | ) ) | |
| GARMIN INTERNATIONAL, INC. and GARMIN USA, INC., | ) ) ) | ORDER |
| Defendants. | ) ) ) | |

Presently before the Court is Plaintiff's Motion to Strike Portions of Defendants'
First Amended Non-Infringement, Invalidity, and Unenforceability Contentions (Doc. #93),
filed on October 25, 2013.  Defendants Garmin International, Inc. and Garmin USA, Inc.
filed an Opposition (Doc. #94) on November 8, 2013.  Plaintiff Silver State Intellectual
Technologies, Inc. filed a Reply (Doc. #97) on November 18, 2013.  Plaintiff filed a
Supplemental Memorandum (Doc. #108) with supporting Declaration (Doc. #109) and
Exhibit (Doc. #110) on March 3, 2014.  Defendants filed a Response to Plaintiffs'
Supplemental Memorandum (Doc. #113) on March 10, 2014.

Also before the Court is Defendants' Motion for Partial Summary Judgment
(Doc. #115), filed on March 21, 2014.  Plaintiff filed an Opposition (Doc. #117) on April
18, 2014.  Defendants filed a Reply (Doc. #123) on May 2, 2014.

# I. BACKGROUND

Plaintiff Silver State Intellectual Technologies, Inc. ("Silver State") owns the legal rights to United States Patent Nos. 6,525,768 (the '768 Patent), 6,529,824 (the '824 Patent), 7,702,455 (the '455 Patent), 7,522,992 (the '992 Patent), 7,593,812 (the '3812 Patent), 7,739,039 (the '039 Patent), 7,650,234 (the '234 Patent), 7,343,165 (the '165 Patent), and 6,542,812 ('2812 Patent).  Silver State's patents generally cover various navigation processes and devices.

Silver State filed a Complaint against Defendants Garmin International, Inc. and Garmin USA, Inc. (together, "Garmin"), alleging Garmin sells navigation devices that infringe Silver State's patents.  (Compl. (Doc. #1).)  Garmin filed an Answer, asserting that it does not directly or indirectly infringe Silver State's patents, as well as various other defenses.  (Garmin's Ans. to Silver State's Compl. & Countercl. (Doc. #21).)  Garmin also asserted counterclaims seeking declarations that the asserted patent claims are invalid and that Garmin does not infringe any valid asserted patent claim.  (Id.)  Silver State filed an Answer to Garmin's counterclaims, denying that Garmin is entitled to a declaration of invalidity or non-infringement.  (Pl.'s Reply to Countercls. of Garmin (Doc. #25).)

Prior to claim construction, the Court granted the parties' stipulations to dismiss all claims and counterclaims related to the '165 Patent and the '2812 Patent.  (Order Granting Stip. (Doc. #49); Order Granting Stip. (Doc. #58).)  On August 13, 2013, the Court entered a claim construction Order for the disputed patent claim terms.  (Order (Doc. #83).)  Following the Court's claim construction Order, the parties stipulated to dismiss all claims and counterclaims related to the '768, '824, and '234 Patents.  (Order Granting Stip. (Doc. #92); Order Granting Stip. (Doc. #96).)  The four Silver State patents that remain in this case are the '455 Patent, the '992 Patent, the '3812 Patent, and the '039 Patent.

Plaintiff Silver State now moves to strike portions of Garmin's First Amended Non-Infringement, Invalidity, and Unenforceability Contentions ("Amended Contentions").

Silver State contends Garmin has not shown good cause for the amendments because Garmin was not diligent and Silver State would be prejudiced.  Garmin responds that the amendments are highly relevant, Garmin exercised diligence following the Court's claim construction Order, and any prejudice to Silver State can be cured.

Garmin separately moves for partial summary judgment.  Garmin contends the '992 Patent claims asserted in this case are invalid because Garmin's product, StreetPilot, and a third party product, DeLorme's Map'n'Go 4.0, anticipate the '992 Patent claims. Garmin also argues Garmin's accused products do not infringe the '455 Patent because the Court should construe the asserted claims to require two-way communication, but Garmin's accused products use only one-way broadcast technology.  Silver State responds that neither StreetPilot nor Map'n'Go 4.0 anticipate the '992 Patent.  Silver State also argues the Court's claim construction Order already found the '455 Patent encompasses one-way communications, Garmin has waived any arguments the '455 Patent is limited to two-way communications, and the evidence supports the finding that the '455 Patent covers one-way communications.

**II.  SILVER STATE'S MOTION TO STRIKE**

Silver State moves to strike portions of Garmin's Amended Contentions, arguing Garmin served the Amended Contentions on the last day of fact discovery, and for the first time identified prior art which Garmin asserts renders Silver State's patents invalid.  Silver State contends Garmin was not diligent in locating and identifying this prior art, which includes Garmin's own products (StreetPilot, 250XL, NavTalk, and their manuals), two third-party products (the 1998 Lexus GS400 and the Atlanta Traveler Information System), five patents, and the publication entitled "The Evolution of ADVANCE."

Silver State also objects to Garmin's addition of new legal arguments regarding alleged lack of enablement or written description with respect to the '455, '992, and '3812 Patents.  Silver State contends that because these arguments are based on the disclosures in

these patents, they have been available to Garmin since the inception of the case.  Finally, Silver State objects to new invalidity arguments with respect to the '039 Patent based on references disclosed in Garmin's original contentions, and because Garmin has not been diligent in amending its contentions based on information it has had for a long time.

Silver State argues the Court should not allow late amendment because Garmin cannot show good cause to amend due to Garmin's lack of diligence.  Additionally, Silver State contends allowing the amendments would prejudice Silver State because fact discovery is closed, and Silver State will not have an opportunity to investigate these amendments.

Garmin responds that good cause exists for the amendments based on the Court's claim construction Order, which Garmin asserts was adverse to Garmin and gave a broad construction in Silver State's favor.  Garmin argues that the Local Rules contemplate amendments by accused infringers following an adverse claim construction ruling, and the Nevada Local Rules do not require Garmin to show prior art was newly discovered after a prior diligent search as Silver State contends.  Garmin asserts each new prior art reference was located in response to the Court's claim construction of certain terms.  Garmin argues that its new legal arguments arose out of the Court's claim construction as well.

As to the ADVANCE publication, Garmin asserts Silver State has been on notice about this prior art since Garmin's preliminary contentions and Silver State took no discovery related to this prior art.  As to two of the patents, Garmin argues they are related to a minor dependent claim limitation in the '3812 patent, and Silver State does not identify any specific discovery it would take or any prejudice it would suffer in relation to these two patents being identified as prior art.

Finally, Garmin argues its newly added prior art is highly relevant to show invalidity, and any prejudice to Silver State can be remedied.  Specifically, Garmin proposes to extend the discovery deadlines to allow Silver State to take discovery from

1   Garmin and third parties related to the Amended Contentions.  Garmin also asserts Silver

2   State has passed up opportunities to conduct the discovery which Silver State now contends

3   would be required.

4          Under the District of Nevada's adopted Local Rules for Patent Cases ("Local

5   Patent Rules"), a party claiming patent infringement must serve on the opposing party a

6   disclosure of asserted claims and infringement contentions within fourteen days of the

7   initial scheduling conference.  LR 16.1-6.  Within forty-five days of service of this

8   disclosure, a party opposing a claim of patent infringement must disclose and serve its

9   contentions regarding non-infringement, invalidity, and unenforceability.  LR 16.1-8.

10  These contentions must include "detailed description[s] of the factual and legal grounds"

11  for contentions of non-infringement, invalidity, and unenforceability.  LR 16.1-8(a)-(b), (f).

12  The disclosures must identify any prior art on which the invalidity contentions rely.  LR

13  16.1-8(b).  A party may amend its disclosures "for good cause without leave of Court

14  anytime before the discovery cut-off date."  LR 16.1-12.  However, once discovery closes,

15  the disclosures may be amended "only by order of the Court upon a timely showing of good

16  cause."  Id.

17         As of June 29, 2012, the parties had served on each other their initial contentions

18  and responses thereto.  (Notice of Service of Contentions (Doc. #40).)  On September 07,

19  2012, the parties produced their first claim construction chart to the Court, with each side's

20  proposed construction of the disputed terms.  (Jt. Claim Constr. & Prehearing Statement

21  (Doc. #47).)  By November 2012, the parties completed briefing on claim construction.

22  (Opening Br. (Doc. #53); Ans. Br. (Doc. #54); Reply Br. (Doc. #55).)  On December 17,

23  2012, the parties filed an amended claim construction chart.  (Notice of Second Am. Jt.

24  Claim Constr. Chart (Doc. #60).)  The parties filed another amended claim construction

25  chart on April 1, 2013.  (Notice of Am. Disputed Claim Terms Summary Sheet & Proposed

26  Order of Presentation (Doc. #73).)  The Court held a claim construction hearing on April 5,

2013.  (Mins. of Proceedings (Doc. #74).)  The Court issued its claim construction Order on August 13, 2013.  (Order (Doc. #83).)  Garmin served Silver State with its First Amended Preliminary Non-Infringement, Invalidity, and Unenforceability Contentions on October 18, 2013, the last day of fact discovery in this case.  (Pl.'s Mot. to Strike Portions of Defs.' First Am. Non-Infringement, Invalidity, & Unenforceability Contentions (Doc. #93), Ex. 4; Order on Stip. to Extend Fact & Expert Discovery Cutoff Dates (Doc. #86).)

### A. Good Cause Standard

The parties dispute this District's good cause standard under the Local Patent Rules.  Silver State contends that to establish good cause to amend contentions, Garmin must show it was diligent both in discovering the prior art or legal arguments, and in moving to amend its contentions.  Garmin argues the good cause requirement is met if the Court construes claim terms differently than the proposed constructions offered by the amending party.  Garmin contends "the amending party need not also demonstrate that the prior art was newly found despite an earlier diligent search."  (Defs.' Resp. to Pl.'s Mot. to Strike (Doc. #94) ["Garmin Opp'n"] at 2.)

The District of Nevada's Local Patent Rules, like the local patent rules for the Northern District of California, are designed to require the parties to provide "early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery."  O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) (discussing local patent rules for the Northern District of California).  "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories."  Id. at 1366.  The requirement that amendments be made only for good cause "disallows infringement contentions from becoming moving targets throughout the lawsuit."  CBS Interactive, Inc. v. Etilize, Inc., 257 F.R.D. 195, 201 (N.D. Cal. 2009) (quotation omitted).  In contrast to the liberal policy for amending pleadings under Rule 15,

"the philosophy behind amending claim charts [under the Local Patent Rules] is decidedly conservative and designed to prevent the 'shifting sands' approach to claim construction." Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 774 (Fed. Cir. 2002) (quotation omitted) (discussing local rules for the Northern District of California).

Local Patent Rule 16.1-12 provides a list of "[n]on-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause," including "a claim construction by the Court different from that proposed by the party seeking amendment." As the Rule states, these examples may, but do not necessarily, constitute good cause. The fact that the Court adopts a claim construction different from that proposed by the party seeking to amend does not necessarily constitute good cause to amend, particularly where the Court adopts the construction proposed by the other party, as such a construction would not come as a surprise to the party seeking to amend. See Finisar Corp. v. DirecTV Group, Inc., 424 F. Supp. 2d 896, 901-02 (E.D. Tex. 2006); Verinata Health, Inc. v. Sequenom, Inc., No. C 12-00865 SI, 2014 WL 789197, at *2 (N.D. Cal. Feb. 26, 2014) (unpublished).

In addition to establishing a reason for the amendment, the good cause standard requires the party seeking to amend to establish it acted diligently. O2 Micro Int'l Ltd., 467 F.3d at 1366; see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (holding, in an analogous context, that the good cause standard "primarily considers the diligence of the party seeking the amendment"). Finally, the Court considers whether the opposing party would be unfairly prejudiced by "eleventh-hour alterations." Finisar Corp., 424 F. Supp. 2d at 900 (quotation omitted). Enforcement of the Local Patent Rules lies within the Court's discretion. Genentech, Inc., 289 F.3d at 774.

### B.  StreetPilot, NavTalk, 250XL, and 1998 Lexus GS400

Garmin's initial contentions did not identify StreetPilot, NavTalk, 250XL, or the 1998 Lexus GS400 as prior art for the '992, '3812, or '039 Patents. (Mot. to Strike, Ex. 2 at

37-40, 43-44.)  Garmin's Amended Contentions added StreetPilot and the 1998 Lexus GS400 as prior art for the '992 Patent; StreetPilot, 250XL, and NavTalk for the '3812 Patent; and the 1998 Lexus GS400 for the '039 Patent.  (Mot. to Strike, Ex. 4 at 127, 130-31, 136.)

In support of allowing the amendment, Garmin contends the Court rejected Garmin's proposed construction of the "user preferences" claim limitations in the '992, '3812, and '039 Patents, and consequently, "the accused concept of saving a particular location for later reference . . . gained substantial importance" following the claim construction Order.  (Garmin Opp'n at 4.)  Garmin states that as a result of the Court's construction of this claim term, Garmin renewed efforts to identify prior art and amended its contentions to add three of its own products, StreetPilot, NavTalk, and 250XL, and a third party product, the 1998 Lexus GS400.  (Id.)  Silver State counters that Garmin has known about the possibility that the Court would adopt Silver State's proposed construction of the user preferences limitations for a long time, and Garmin therefore was not diligent in disclosing these prior art references.  Silver State also contends it has been prejudiced because Garmin did not amend its contentions until the last day of fact discovery.

In the Court's claim construction Order, the Court construed the user preferences claim limitations as not being limited to types of goods and service providers, and that the limitations required no further construction.  (Order (Doc. #83) at 30.)  In doing so, the Court rejected Garmin's proposed constructions.  (Id. at 29-30.)  The Court instead adopted Silver State's proposed construction of a plain and ordinary meaning without imposing the additional limitations suggested by Garmin.  (Id. at 24-30.)

This is not a case where the Court's claim construction Order adopted an unexpected construction that would prompt the parties to evaluate anew any applicable prior art.  Silver State made its arguments about the proper construction of the user preferences term limitations in its Opening Claim Construction Brief, filed in September

2012.  (Silver State's Consol. Opening Claim Constr. Br. (Doc. #53) at 15-18.)
Consequently, at least as of September 27, 2012, almost a year before the Court's claim
construction Order, Garmin was on notice of Silver State's proposed construction.  Garmin
has not explained why it did not investigate the newly identified prior art upon receiving
Silver State's claim construction brief instead of waiting to see how the Court would
construe the user preferences claim limitations.  Garmin was aware of the risk, and should
have prepared for the possibility, that the Court would adopt Silver State's proposed
construction.  The Local Patent Rules do not contemplate allowing a party to postpone
disclosures in the hope the Court will adopt its proposed claim constructions, and disclosing
all pertinent contentions and supporting prior art only after the party loses at claim
construction.  Garmin's position is further weakened by the fact that Garmin bears the
burden of establishing the invalidity defense to which the late-disclosed prior art relates.
Garmin has not shown it was diligent in locating the prior art it now seeks to add to its
contentions supporting its affirmative defense of invalidity.

Garmin also has not shown it was diligent in amending its contentions following
the Court's claim construction Order.  The responding party typically has forty-five days
from receipt of the initial disclosures to file contentions regarding invalidity, enforceability,
and infringement.  LR 16.1-8.  Garmin nevertheless waited over two months following the
Court's claim construction Order to file its amendments.  Garmin's lack of diligence is
particularly egregious with respect to StreetPilot, NavTalk, and 250XL—three of its own
products.  Garmin does not explain why it waited so long to identify its own products as
prior art following the Court's claim construction Order, yet Garmin surely was aware of
the possibility the Court would adopt Silver State's proposed constructions for nearly a
year.

In addition to Garmin's lack of diligence, Silver State would be prejudiced by
allowing the late amendment, particularly with respect to StreetPilot.  By Garmin's own

version of events, Garmin did not give Silver State notice that it might amend its contentions to add StreetPilot as prior art until October 4, 2013, just two weeks before fact discovery closed, when Garmin produced the StreetPilot manual.  (Garmin Opp'n, Decl. of Paul R. Hart at 3.)  Even this belated "notice" was cryptic, as Garmin relies on the fact that Silver State should have recognized the StreetPilot manual was Bates-stamped as "GARM-PRIART" to put Silver State on notice that Garmin was considering adding StreetPilot as prior art.  Garmin likewise produced "GARM-PRIART" stamped documents relating to the Lexus GS400, NavTalk, and 250XL on September 13, 2013.  (Id.)  Garmin advised Silver State it was going to inspect the Lexus GS400 in the possession of a third party, and invited Silver State to attend, on September 20, 2013.  (Id.)  Garmin and Silver State inspected the Lexus GS400 at the third party's facility on September 23, 2013.  (Id.)  However, Garmin did not actually amend its contentions to add this prior art until October 18, 2013, the last day of fact discovery.

Although Silver State had more notice with respect to the Lexus GS400 prior to the close of fact discovery, and in fact participated in the inspection, given Garmin's lack of diligence generally and the tight time frame for completion of fact discovery, Silver State would be prejudiced by allowing the late disclosure of all of these prior art references. Given Garmin's lack of diligence in identifying these prior art references, the Court will not allow further extension of the discovery deadlines.  See ChemFree Corp. v. J. Walter, Inc., 250 F.R.D. 570, 574 (N.D. Ga. 2007) ("Enough time and money will eventually cure any prejudice caused by late disclosure of information, but that will not result in the just, speedy and inexpensive determination of every action." (quotation omitted)).

In sum, although good cause to amend may arise when the Court's claim construction is different from that proposed by the party seeking amendment, the Court concludes that in this case, the Court's claim construction Order does not constitute good cause for Garmin to amend to add the StreetPilot, NavTalk, 250XL, and the 1998 Lexus

GS400 as prior art for Garmin's invalidity contentions.  Garmin has not shown it was

diligent in locating these prior art references.  Garmin also has not demonstrated it was

diligent in seeking to amend its contentions following the Court's claim construction Order.

Finally, the late amendments would cause prejudice to Silver State.  The Court therefore

will grant Silver State's Motion to Strike Garmin's Amended Contentions related to the

StreetPilot, NavTalk, 250XL, and the 1998 Lexus GS400.

### C.  The Atlanta Traveler Information System

Garmin's initial contentions did not include the Atlanta Traveler Information

System as prior art for the '455 Patent.  (Mot. to Strike, Ex. 2 at 45-46.)  Garmin's

Amended Contentions added the Atlanta Traveler Information System as prior art for the

'455 Patent.  (Mot. to Strike, Ex. 4 at 139.)

In support of allowing the amendment, Garmin contends the Court rejected

Garmin's proposed construction of "a request for data concerning traffic pertaining to an

area" in the '455 Patent.  (Garmin Opp'n at 4.)  Garmin contends that in response to the

Court's Order, Garmin renewed efforts to locate prior art and added the Atlanta Traveler

Information System as a result.  Silver State asserts that Garmin has known about the

possibility that the Court would adopt Silver State's proposed construction of this claim

limitation for a long time, and Garmin therefore was not diligent in disclosing this prior art

reference.  Silver State also contends it has been prejudiced because Garmin did not amend

its contentions until the last day of fact discovery.

In the Court's claim construction Order, the Court construed the limitation "a

request for data concerning traffic pertaining to an area" by adopting Silver State's proposal

and rejecting Garmin's proposed limitation.  (Order (Doc. #83) at 20-21.)  For the same

reasons as discussed above, the Court concludes Garmin has not shown it was diligent in

amending its contentions to add the Atlanta Traveler Information System.  Garmin was

aware of the risk, and should have prepared for the possibility, that the Court would adopt

Silver State's proposed construction.   Additionally, Garmin was not diligent in amending its contentions to add this prior art following the Court's claim construction Order. Although Garmin produced "GARM-PRIART" dcouments related to the Atlanta Traveler System to Silver State on September 13, 2013, Garmin did not amend to add this prior art reference until October 18, 2013, over two months after the Court's claim construction Order and the last day of fact discovery.  Finally, for the reasons discussed above, Silver State would be prejudiced by the late amendment.  The Court therefore will grant Silver State's Motion to Strike Garmin's Amended Contentions related to the Atlanta Traveler System.

### D.  U.S. Patent Nos. 5,406,490, 5,933,094, and 6,438,561

Garmin's initial contentions did not include U.S. Patent Nos. 5,406,490, 5,933,094, and 6,438,561 as prior art for the '234 Patent.  (Mot. to Strike, Ex. 2 at 41.) Garmin's Amended Contentions listed these patents as prior art for the '455 Patent.  (Mot. to Strike, Ex. 4 at 133.)

In support of allowing the amendment, Garmin contends the Court rejected Garmin's proposed construction of claim 17 of '234 Patent.  (Garmin Opp'n at 4-5.) Garmin contends that in response to the Court's Order, Garmin renewed efforts to locate prior art and added U.S. Patent Nos. 5,406,490, 5,933,094, and 6,438,561 as a result.  Silver State asserts that Garmin has known about the possibility that the Court would adopt Silver State's proposed construction of this claim limitation for a long time, and Garmin therefore was not diligent in disclosing this prior art reference.  Silver State also contends it has been prejudiced because Garmin did not amend its contentions until the last day of fact discovery.

In construing claim 17 of the '234 Patent, the Court rejected Garmin's proposed construction of the claim and generally adopted Silver State's proposed construction with minor clarification.  (Order (Doc. #83) at 33-34.)  For the same reasons as discussed above,

the Court concludes Garmin has not shown it was diligent in amending its contentions to add U.S. Patent Nos. 5,406,490, 5,933,094, and 6,438,561.  Once again, Garmin was aware of the risk, and should have prepared for the possibility, that the Court would adopt Silver State's proposed construction.  Garmin does not identify anything about the Court's proposed construction that specifically triggered a different search for prior art, relying solely on the fact that the Court did not adopt Garmin's proposed construction. Additionally, Garmin was not diligent in amending its contentions to add this prior art following the Court's claim construction Order.  Although Garmin produced "GARM-PRIART" dcouments related to U.S. Patent Nos. 5,406,490, 5,933,094, and 6,438,561 to Silver State on September 13, 2013, Garmin did not amend to add these prior art references until October 18, 2013, over two months after the Court's claim construction Order and the last day of fact discovery.  Finally, for the reasons discussed above, Silver State would be prejudiced by the late amendment.  The Court therefore will grant Silver State's Motion to Strike Garmin's Amended Contentions related to U.S. Patent Nos. 5,406,490, 5,933,094, and 6,438,561.

### E. Enablement

Garmin's initial contentions did not contain arguments regarding invalidity under 35 U.S.C. § 112. (Mot. to Strike, Ex. 2.)  Garmin's amended contentions added invalidity contentions under 35 U.S.C. § 112 with respect to the '455 Patent for failing to meet the written description requirement, and with respect to the '992, '3812, and '234 Patents for lack of enablement and written description.  (Mot. to Strike, Ex. 4 at 122-24.)

In support of allowing Garmin to amend to add new contentions regarding enablement, Garmin contends that "[w]hen the Court rejected Garmin's proposed constructions on the '992, '812, and '455 Patents, it opened the door for these legal invalidity challenges."  (Garmin Opp'n at 5.)  Silver State contends Garmin was not diligent in waiting two months to amend to add new legal arguments.

Garmin does not elaborate on what specifically in the Court's Order opened the door to the amended legal arguments of invalidity under 35 U.S.C. § 112.  Garmin also does not explain why Garmin could not have anticipated these invalidity contentions based on Silver State's proposed constructions prior to the Court's claim construction Order. Moreover, Garmin does not explain why it waited over two months following the Court's claim construction Order to add the new legal arguments.  Garmin thus has not established it was diligent in amending its contentions.  Silver State has not identified any prejudice specific to the amended legal contentions.  Nevertheless, the Court concludes Garmin's lack of diligence warrants granting Silver State's Motion to Strike the new legal arguments regarding invalidity under 35 U.S.C. § 112.

### F.  ADVANCE and TravTek

In its initial contentions, Garmin identified the ADVANCE system as prior art for the '234 Patent but did not identify TravTek as prior art for the '234 Patent.  (Mot. to Strike, Ex. 2 at 41-42.)  Similarly, Garmin identified TravTek as prior art for the '039 Patent, but did not identify ADVANCE as prior art for the '039 Patent.  (Id. at 41-44.)  In its amended contentions, Garmin added TravTek as prior art to the '234 Patent, and added ADVANCE as prior art to the '039 Patent.  (Mot. to Strike, Ex. 4 at 132-33, 136-37.)

In support of allowing the amendment, Garmin argues Silver State has been on notice of these prior art citations since Garmin served its preliminary contentions on May 16, 2012, yet Silver State took no discovery in relation to either one.  Garmin thus argues Silver State was aware of this prior art and would not be prejudiced because Silver State passed up prior opportunities to conduct discovery on this prior art.  Silver State argues that Garmin knew about this prior art from the time it served its initial contentions, yet it did not specify that both prior art references applied to both patents.  Silver State thus contends Garmin was not diligent in amending to add this prior art to apply to the '234 or '039 Patents.  Silver State also asserts that Garmin admits nothing in the Court's claim

construction Order generated the amendment, and Garmin has offered no other explanation for why it waited until the end of fact discovery to amend to add these contentions.

Garmin offers no good cause to support the amendment.  Garmin does not suggest the Court's claim construction Order prompted the amendment, and Garmin offers no other explanation for why Garmin did not make the amendment earlier.  Garmin thus has not established it was diligent in amending its contentions.  Although Silver State knew about these prior art references, Silver State did not know until the last day of discovery that Garmin was contending both prior art references applied to both patents.  Silver State therefore would be prejudiced by the late amendment.  The Court concludes Garmin's lack of diligence warrants granting Silver State's Motion to Strike the amendments adding TravTek as prior art for the '234 Patent and adding ADVANCE as prior art to the '039 Patent.

### G.  U.S. Patent Nos. 4,506,377 and 6,230,136

Garmin's Amended Contentions added as prior art for the '3812 Patent two new patents not previously disclosed, U.S. Patent Nos. 4,506,377 and 6,230,163.  (Mot. to Strike, Ex. 2 at 39, Ex. 4 at 130.)  In support of allowing the amendment, Garmin contends U.S. Patent Nos. 4,506,377 and 6,230,136 each relates only to a "minor dependent claim limitation in the '812 Patent," no discovery would be needed to address this prior art, and Silver State will suffer no prejudice from this amendment.  Silver State argues Garmin admits the Court's claim construction Order did not prompt the amendment and Garmin has offered no explanation for why it waited to make the amendment.

Once again, Garmin offers no good cause to support the amendment.  Garmin does not suggest the Court's claim construction Order prompted the amendment, and Garmin offers no other explanation for why Garmin did not make the amendment earlier.  Garmin thus has not established it was diligent in amending its contentions.  Late amendment would prejudice Silver State, which did not know until the last day of fact

discovery that Garmin was contending these prior art references applied to the '3812 Patent. Silver State therefore would be prejudiced by the late amendment. The Court concludes Garmin's lack of diligence and prejudice to Silver State warrant granting Silver State's Motion to Strike the amendments adding U.S. Patent Nos. 4,506,377 and 6,230,163 as prior art to the '3812 Patent.

**III.  GARMIN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Garmin separately moves for partial summary judgment. Garmin contends the '992 Patent claims asserted in this case are invalid because Garmin's product, StreetPilot, and a third party product, DeLorme's Map'n'Go 4.0, anticipate the '992 Patent claims. Garmin also argues Garmin's accused products do not infringe the '455 Patent because the Court should construe the asserted claims to require two-way communication, but Garmin's accused products use only one-way broadcast technology. Silver State responds that neither StreetPilot nor Map'n'Go 4.0 anticipate the '992 Patent. Silver State also argues the Court's claim construction Order already found the '455 Patent encompasses one-way communications, Garmin has waived any arguments the '455 Patent is limited to two-way communications, and the evidence supports the finding that the '455 Patent covers one-way communications.

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). If the

moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial.  Id.  The Court views all evidence in the light most favorable to the non-moving party.  Id.

### A.  Anticipation of the '992 - StreetPilot

The Court has granted Silver State's Motion to Strike Garmin's Amended Contentions adding StreetPilot as prior art for the '992 Patent.  The Court therefore will deny Garmin's Motion for Partial Summary Judgment to the extent it is based on StreetPilot.

### B.  Anticipation of the '992 - Map'n'Go 4.0

Garmin contends that a year prior to Silver State's invention set forth in the '992 Patent, DeLorme released for sale to the public Map'n'Go 4.0, a navigation software that was intended to be installed on a laptop computer and combined with a GPS receiver to operate as a vehicle navigation system.  Garmin contends Map'n'Go 4.0 was on sale prior to the claimed invention in the '992 Patent, and Map'n'Go 4.0 anticipates every claim limitation in claims 23-24 and 26-33 of the '992 Patent.

Silver State opposes Garmin's Motion, arguing that Garmin did not disclose in its contentions the theory that Map'n'Go 4.0 in combination with a laptop and GPS receiver anticipated the '992 Patent, and the Court therefore should not consider this theory.  Silver State also objects to evidence Garmin presents in support of its arguments that Map'n'Go 4.0 anticipates the '992 Patent.  Finally, Silver State contends that even if the Court considers Garmin's theory and evidence, Garmin has failed to meet its burden of demonstrating by clear and convincing evidence that Map'n'Go 4.0 in combination with a laptop and GPS receiver anticipates the '992 Patent.

### 1.  Disclosure of Combination of Prior Art

The Court will consider Garmin's affirmative defense that Map'n'Go 4.0 in combination with a laptop and GPS receiver anticipates the '992 Patent under 35 U.S.C.

§ 102(b).  Garmin disclosed Map'n'Go 4.0 in its initial disclosures as prior art which may anticipate the asserted claims in the '992 Patent under 35 U.S.C. § 102.  (Mot. to Strike, Ex. 2 at 15-17, 37-38.)  In its amended disclosures, Garmin again identified Map'n'Go 4.0 as prior art for the '992 Patent for anticipation purposes.  (Opp'n to Mot. Summ. J. (Doc. #117), Ex. 17 at 786-87, 803-27.)  Garmin's prior art chart with respect to the '992 Patent lists Map'n'Go 4.0 without reference to the laptop and GPS receiver, but Garmin provides a more detailed invalidity chart which references the combination of Map'n'Go 4.0 with a laptop and GPS receiver.  (Compare id. at 803 with id. at 807-09.)  Garmin could have been more specific, but the chart sufficiently discloses the combination of Map'n'Go with a laptop and GPS receiver.

### 2.  35 U.S.C. § 102(b) - On Sale Bar

Garmin argues the '992 Patent is invalid because it was anticipated by prior art that was on sale for one year prior to the critical filing date for the '992 Patent, October 19, 1998.  Specifically, Garmin argues Map'n'Go 4.0, a navigation software package, was on sale at least by April 20, 1998, as demonstrated by a press release announcing the public availability of the software.  Garmin contends that during discovery, Silver State did not deny that Map'n'Go 4.0 was on sale before October 1998.  Finally, Garmin contends Map'n'Go 4.0, in combination with a laptop and GPS receiver, meets every claim limitation of the '992 Patent, thereby rendering the Patent invalid as anticipated by prior art that was on sale for one year prior to the critical date.

Silver State responds by objecting to the evidence Garmin produces in support of its Motion as unauthenticated, hearsay, and the subject of averments by counsel who lacks personal knowledge.  Silver State also argues that Garmin has not shown that Map'n'Go 4.0 combined with a laptop and GPS receiver was sold or offered for sale before the critical date.  Silver State also disputes that Map'n'Go 4.0 combined with a laptop and GPS receiver meets every claim limitation of the '992 Patent.  Silver State thus contends Garmin

has not met its burden of showing invalidity by clear and convincing evidence.

A patent is invalid as anticipated under 35 U.S.C. § 102(b)[1] if "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."  Because "[a]n issued patent is presumed valid," the party challenging the patent's validity bears the burden of showing it is invalid by clear and convincing evidence.  Minn. Min. & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002).[2]  The on-sale bar thus applies when the party challenging the patent's validity shows by clear and convincing evidence that prior to the critical date, (1) the product was "the subject of a commercial offer for sale," and (2) the invention was "ready for patenting."  Pfaff v. Wells Elec., Inc., 525 U.S. 55, 67-68 (1998).

To determine whether the product was the subject of a commercial offer for sale, the Court generally refers to the Uniform Commercial Code ("UCC") and the Restatement of Contracts.  Minn. Min. & Mfg. Co., 303 F.3d at 1307-08; Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001).  "Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)."  Group One, Ltd., 254 F.3d at 1048; Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc., 726 F.3d 1370, 1374-75 (Fed. Cir. 2013) (stating that an offer for sale must be "sufficiently definite that another party could make a binding contract by simple acceptance" (quotation omitted)).  In contrast, "advertising and promoting of a product may

---

[1]  The pre-Leahy-Smith America Invents Act version of 35 U.S.C. § 102 applies in this case because the '992 Patent was issued April 21, 2009.  See (Compl. (Doc. #1), Ex. E); Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 285, § 35 (Sept. 16, 2011) (stating that the Act applies to patents issued on or after the Act's effective date, which was one year after the date of enactment).

[2]  Clear and convincing evidence means "evidence which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable."  Buildex Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988).

be nothing more than an invitation for offers, while responding to such an invitation may itself be an offer." Group One, Ltd., 254 F.3d at 1048 (citing Restatement (Second) of Contracts § 26 (1981)). To determine whether an offeror has made a definite offer, the Court examines "the language of the proposal itself." Id. The offer for sale need not be authorized by the patentee to trigger the on-sale bar. ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 866 (Fed. Cir. 2010).

Whether "a product was placed on sale prior to the critical date is a conclusion of law based on underlying findings of fact." Minn. Min. & Mfg. Co., 303 F.3d at 1301. Whether a patent is anticipated is a question of fact, but the Court may resolve anticipation at summary judgment if there are no genuine issues of material fact. Zenith Elec. Corp. v. PDI Commc'n Sys., Inc., 522 F.3d 1348, 1356-57 (Fed. Cir. 2008); Minn. Min. & Mfg. Co., 303 F.3d at 1301.

Garmin has failed to establish by clear and convincing evidence that no genuine issue of material fact remains that Map'n'Go 4.0 was sold or offered for sale before the critical date of October 19, 1998. First, Garmin offers no evidence of any actual sales. Second, Garmin relies on Silver State's answers to Garmin's requests for admissions during discovery and an April 20, 1998 press release as evidence that Map'n'Go 4.0 was on sale over one year prior to the critical date. In response to Garmin's request that Silver State admit that Map'n'Go 4.0 was on sale prior to October 1998, Silver State responded that it could "neither admit nor deny this Request." (Decl. of Paul Hart in Support of Garmin's Mot. Partial Summ. J. (Doc. #116) ["Hart Decl."] at 3 & Ex. M at 117-18.) Silver State's response was not an admission, and does not constitute clear and convincing evidence that Map'n'Go 4.0 was offered for sale before the critical date.

The April 20, 1998 press release, attached as Exhibit L to the declaration of Garmin's attorney, Paul Hart ("Hart"), is unauthenticated hearsay which cannot support a summary judgment motion. Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773, 776 (9th

Cir. 2002).  Hart avers that Exhibit L "is a true and correct copy of an April 20, 1998 Press Release for DeLorme's Map'n'Go 4.0, retrieved from www.thefreelibrary.com on September 10, 2013."  (Hart Decl. at 3.)  Although Hart may authenticate the fact that he obtained the press release from this website, Hart provides no information about the website from which he obtained this press release such that the Court could conclude the press release is authentic.  Hart has not explained how he would have personal knowledge of whether DeLorme actually issued a press release on April 20, 1998 regarding Map'n'Go 4.0.  Further, assuming the news release is authentic, it is hearsay to the extent Garmin seeks to offer it for the truth of the matter asserted, that Map'n'Go 4.0 was available for purchase.  Garmin has not offered any nonhearsay use for the press release nor has Garmin proposed a hearsay exception for admitting the press release into evidence in response to Silver State's hearsay objection.

In its Reply, Garmin contends its expert, Dr. William Michalson, relied on the press release to opine that Map'n'Go 4.0 was released around April 20, 1998, and Garmin argues an expert may rely on hearsay evidence to opine on a release date.  However, Dr. Michalson does not opine in the attached appendix to his report that Map'n'Go 4.0 was released around April 20, 1998.  Rather, he states that it was his "understanding" that Map'n'Go was released around April 20, 1998.  (Hart Decl. at 3 & Ex. I at 19-20.)  It is unclear from this language whether Dr. Michalson was making a finding on the point, or whether he was relying on what had been represented to him.  To the extent he was offering an opinion regarding release date, Dr. Michalson does not explain what he means by the term "released."  Specifically, he does not opine in the excerpts provided that Map'n'Go 4.0 was actually sold or the subject of an actual offer to sell before the critical date for the '992 Patent for purposes of the on-sale bar.  In a declaration attached to the reply, Dr. Michalson states that in his initial report, he "concluded" that Map'n'Go 4.0 was released around April 20, 1998, and he based this conclusion on the press release, the fact that the product is

marked as the 1998 edition, the fact that many of the permanent files are dated April 2, 1998 or earlier, and the last page of the product insert has "rel 4/98" printed on the page. (Reply in Support of Garmin's Mot. Partial Summ. J. (Doc. #123) ["Garmin MPSJ Reply"], Decl. of William R. Michalson.)  However, Garmin did not rely on an opinion regarding a sale date from Dr. Michalson in its initial Motion, and Silver State has not had an opportunity to respond to these arguments or to Dr. Michalson's new declaration submitted in support of Garmin's Reply.  See Vasquez v. Rackauckas, 734 F.3d 1025, 1054 (9th Cir. 2013); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996).

Even if the Court considered the April 20, 1998 press release, the press release was an invitation for offers, not an offer for sale.  Generally, advertising is not an offer to sell.  See Mesaros v. United States, 845 F.2d 1576, 1580-81 (Fed. Cir. 1988); Restatement (Second) Contracts § 26 cmt. b ("Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell."). This is so because it generally "is considered unreasonable for a person to believe that advertisements and solicitations are offers that bind the advertiser.  Otherwise, the advertiser could be bound by an excessive number of contracts requiring delivery of goods far in excess of amounts available."  Mesaros, 845 F.2d at 1581.

Assuming the Map'n'Go 4.0 press release is authentic, it refers consumers to retail stores and DeLorme's phone number or website to make a purchase.  It thus appears to be an advertisement directed at the general public, and as such constitutes an invitation for offers, not a firm offer for sale.  As further evidence the press release is not an offer for sale, the press release provides only "an estimated street price of $39."  The material price term therefore is not sufficiently definite such that a consumer could make a binding contract simply by accepting the press release's terms.  Garmin therefore has not presented clear and convincing evidence of an actual sale or actual offer for sale of Map'n'Go 4.0.
///

In its Reply, Garmin contends that "[b]ecause there is no question that a commercial product in the stream of commerce is 'on sale,' and because the evidence demonstrates Map'n'Go 4.0 was placed in the stream of commerce, Silver State's reliance on case law directed to patentee commercialization is misplaced." (Garmin MPSJ Reply at 12.) Garmin presents no law for the proposition that Garmin need not prove actual sales or actual offers to sell where the allegedly anticipating product derives from a third party, rather than the patentee. The Court concludes there is no basis for such a distinction, particularly in light of the standard that invalidity based on the on-sale bar is an affirmative defense that must be shown by clear and convincing evidence.

Garmin has failed to present any admissible evidence, much less clear and convincing evidence, negating any issues of fact to support a finding of invalidity under the on-sale bar in § 102(b). Moreover, even if the Court considered the evidence presented, that evidence does not establish that no genuine issue of fact remains that Map'n'Go 4.0 was actually sold or the subject of an actual offer for sale prior to the critical date. The Court therefore will deny Garmin's Motion for Partial Summary Judgment to the extent it is based on the on-sale bar under § 102(b) with respect to Map'n'Go 4.0.

### C. Infringement of the '455 Patent

Garmin contends its accused products do not infringe the '455 Patent as a matter of law because the Court should construe the '455 Patent to cover two-way communications, meaning the inventive apparatus must send a request for data to an external data provider, but Garmin's accused products are one-way communication devices, meaning they receive data but do not request it from an external data provider. Garmin contends it did not seek claim construction on this point because the issue of one-way versus two-way communication was not a focus of the litigation prior to claim construction. Garmin asserts the issue did not arise until Silver State's expert opined that the claim limitation requiring the product to "request" traffic data would include a request within the

accused device, rather than a request to an external data provider.  Garmin argues Silver

State disclaimed one-way communications before the U.S. Patent and Trademark Office

("PTO") to distinguish prior art, and thus Silver State is barred from asserting the '455

Patent covers one-way communications.  Garmin asserts Silver State's expert agreed that

Silver State disclaimed one-way communication during patent prosecution.  Garmin also

contends that even if Silver State did not disclaim one-way communications, the Court

should construe the '455 Patent to cover only two-way communication based on the claim

language and the written description of the invention.

Silver State responds that Garmin waived any argument that the '455 Patent is

limited to two-way communication because Garmin did not present this argument at the

claim construction stage.  Silver State also contends the Court already construed the '455

Patent to include receipt of broadcast radio frequencies, which would constitute one-way

communication.  Silver State contends this was not a new theory generated by Silver State's

expert as Garmin argues.  Rather, Silver State asserts that Silver State has accused Garmin's

one-way communication devices from the outset, and Silver State's claim construction brief

described devices that receive FM radio broadcasts.  Silver State also argues Garmin's own

expert recognized that Silver State was claiming infringement by one-way communication

devices before Silver State served its expert report on Garmin.  Silver States contends the

claim language and written description confirm the '455 Patent is not limited to two-way

communication.  Finally, Silver State denies it disavowed one-way communication through

patent prosecution.

### 1.  Timeliness

Garmin contends it did not request the Court determine whether the '455 Patent

requires two-way communication at the claim construction phase because Silver State did

not disclose its theory that the device did not have to make a request to an external data

provider until Silver State's expert issued his report after claim construction was complete.

Silver State asserts that it has accused Garmin's one-way communication devices from the beginning of the case, and Garmin thus should have requested claim construction on this issue.  Silver State contends Garmin waived this argument by not seeking a construction by the Court during the claim construction phase.

Silver State's initial disclosures, dated March 1, 2012, accused Garmin devices which received FM broadcasts, and stated that when these devices "are connected to a powered traffic receiver, such as an FM, XM or MSN Direct receiver, a processing unit within the product forms a request for location-specific traffic data from the receiver." (Silver State's Opp'n to Garmin's Mot. Partial Summ. J. (Doc. #117), Decl. of Marko R. Zoretic ["Zoretic Decl."], Ex. 3 at 412, 452.)  Silver State thus accused what Garmin refers to as one-way communication devices from early in this case.  Consequently, Garmin could and should have requested the Court construe the '455 Patent to determine whether it required as a claim limitation that the request from the processor be sent to an external data provider, as Garmin now asserts.  Garmin waived this argument by failing to raise it during claim construction.  See Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 1356 (Fed. Cir. 2007).

### 2.  Claim Construction

Even if the Court considered Garmin's arguments and construed the claim terms, the Court would reject Garmin's proposed limitations.  "To ascertain the scope and meaning of the asserted claims, [courts] look to the words of the claims themselves, the specification, the prosecution history, and, if necessary, any relevant extrinsic evidence."  01 Communique Lab., Inc. v. LogMeIn, Inc., 687 F.3d 1292, 1295-96 (Fed. Cir. 2012) (quotation omitted).  The Court begins by examining the claim language, giving the claim's words their ordinary and customary meaning to a person of ordinary skill in the art. Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310, 1320 (Fed. Cir. 2013); Acumed LLC v. Stryker Corp., 483 F.3d 800, 805 (Fed. Cir. 2007).  The Court also considers the

context of the surrounding words of the claim.  <u>ACTV, Inc. v. Walt Disney Co.</u>, 346 F.3d 1082, 1088 (Fed. Cir. 2003); <u>Exxon Chem. Patents, Inc. v. Lubrizol Corp.</u>, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (stating courts "must give meaning to all the words in [the] claims"). If the claim language is clear on its face, then consideration of intrinsic evidence is limited "to determining if a deviation from the clear language of the claims is specified." <u>Interactive Gift Exp., Inc. v. Compuserve Inc.</u>, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

Furthermore, the Court must construe the claims "in view of the specification[] of which they are a part."  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1315 (Fed. Cir. 2005). (quotation omitted).  For example, the patentee may act as its own "lexicographer" and give a specialized definition of a claim term either explicitly or implicitly, in which case the specification acts as a dictionary for the patent.  <u>Abbott Labs. v. Sandoz, Inc.</u>, 566 F.3d 1282, 1288 (Fed. Cir. 2009); <u>Phillips</u>, 415 F.3d at 1319-21.  "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim."  <u>Abbott Labs.</u>, 566 F.3d at 1288.  However, in reviewing the specification, the Court must not read into the claims the limitations of particular embodiments and examples appearing in the specification.  <u>Id.</u>

If the claim language is not clear after reviewing all intrinsic evidence, then the Court may refer to extrinsic evidence such as expert testimony, inventor testimony, dictionaries, learned treatises, and prior art not cited in the prosecution history.  <u>Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.</u>, 206 F.3d 1408, 1414 (Fed. Cir. 2000).  "Relying on extrinsic evidence to construe a claim is proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence.  Such instances will rarely, if ever, occur."  <u>Interactive Gift Exp.</u>, 256 F.3d at 1332 (internal quotation omitted).

Claim 1 of the '455 Patent claims:

1.  An information apparatus comprising:
   a processing element configured to form a request for data concerning
      traffic pertaining to an area, and to process responsive data to the

request, the responsive data being included in traffic data received from a data provider;

an interface device for requesting and receiving map information from digital map storage separate from the data provider; and

a display for showing thereon map information received from the digital map storage a location of the apparatus, and traffic information resulting from processing the responsive data, the shown map information including a plurality of waypoints indicating corresponding locations of goods or service providers on a map, the waypoints being selectable by a user in an order, wherein the selected waypoints are processed and reordered to suggest to the user a route to the respective locations of good or service providers corresponding to the reordered waypoints.

(Garmin's Mot. Partial Summ. J. (Doc. #115) ["Garmin MPSJ"], Ex. P at cols. 17-18.)

Claims 2 through 7 of the '455 Patent are dependent on claim 1.  (Id., col. 18.)

Claim 1's plain language does not require the request be sent to an external data provider.  Rather, it requires the processing element be configured to form a request and to process responsive data for that request, with the responsive data consisting of traffic data received from an external data provider.  For example, the device could store traffic data received from an external data provider in memory, such that the processor queries the memory, not an external data provider, for responsive data.  Requiring the request be sent to an external data provider would add a limitation not present in the claim language.

The specification confirms this reading.  The specification refers to the processor accessing internal data storage and removable data storage devices.  (Id. at col. 8, ll. 1-8.) While the device periodically may update data provided by an external data provider, the request for data concerning traffic pertaining to an area is not necessarily sent directly to an external data provider, but instead may be sent to, and responsive data received from, the device's memory.  (Id. at col. 10, ll. 42-44, col. 14, ll. 17-34, col. 16, ll. 2-11 & 20-25.) Additionally, the specification discusses situations where the "information would be sent and received by way of a Local Area Broadcast via radio frequency signals to each home, car or PCD within a reception area[]."  (Id. at col. 3, ll. 35-45.)  The specification explains "[t]his would be advantageous to small towns with little information available for travelers,

but which have an interest in providing up-to-date traffic, weather and travel advisories to benefit the local community and businesses." (Id.)  The specification thus contemplates an embodiment where the device would receive information from an external data provider via radio signal without a request sent from the device to the information provider.  Although the specification also discusses embodiments of the invention which will send the data request directly to an external data provider, the Court must not read limitations from a preferred embodiment into the claim language.  (See, e.g., id. at col. 14, ll. 1-6.)  The Court therefore rejects Garmin's proposed construction that the inventive device must send the request to an external data provider based on the claim language and specification.

### 3.  Patent Prosecution

Garmin also contends that even if the claim language and specification do not support Garmin's proposed limitation, the patent applicants disavowed a device that did not send a request to an external data provider during patent prosecution.  In construing a claim, the Court may consider the patent's prosecution history, which consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent."  Phillips, 415 F.3d at 1317.  The prosecution history "provides evidence of how the PTO and the inventor understood the patent," and it may show whether the patentee "limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  Id.; Cordis Corp. v. Medtronic Ave, Inc., 511 F.3d 1157, 1177 (Fed. Cir. 2008) (stating a patent applicant "can make a binding disavowal of claim scope in the course of prosecuting the patent, through arguments made to distinguish prior art references").  However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  Phillips, 415 F.3d at 1317.  The Court should find disavowals based on prosecution history "only if they constitute clear and unmistakable surrenders of

subject matter." <u>Cordis Corp.</u>, 511 F.3d at 1177.

Claim 1 of the '455 Patent originally was claim 65 of the patent application. (Opp'n to Mot. Partial Summ. J. (Doc. #117), Pl.'s Statement of Genuine Disputes Regarding Garmin's Mot. Partial Summ. J. at 77.)  During patent prosecution, the claims examiner rejected claims 51-65 as obvious in light of the Miyake and Dussell prior art. (Garmin MPSJ, Ex. Q at SS-G00002710-16.)  In response to the examiner's rejection, the applicants described the claimed invention as follows:

> when specific traffic data is desired, a request for the specific traffic data is formed in the inventive apparatus.  The request is then sent from the inventive apparatus to a data provider external to the apparatus.  In response to the request, the data provider provides the inventive apparatus with the requested traffic data, which includes geographic location data.

(<u>Id.</u>)  To overcome the claims examiner's rejection, the applicants distinguished Miyake and Dussell as follows:

> Miyake discloses a technique for multiplexed text broadcasting via FM broadcast.  The Examiner attempted to read the inventive information apparatus 2 in Miyake.  However, in Miyake, receiving apparatus 2, analogous to an FM radio, can only passively listen to signals from the FM broadcast by transmitting apparatus 3, but cannot actively request the broadcast operator to provide any specific data, let alone traffic data.  Indeed, receiving apparatus 2 lacks the necessary data transmission capability for sending any such request.
> Applicants respectfully submit that nowhere does Miyake, including the disclosure of receiving apparatus 2 cited by the Examiner, teach or suggest the inventive apparatus capable of two-way communications with an external data provider, which, among others, can "request data concerning traffic from [the] data provider, and to process responsive data to the request," as claim 51 recites.  Similarly, nowhere does Miyake teach or suggest the inventive apparatus which includes a "transmission element for causing transmission of a request for traffic data to [the] data provider," and "a receiver for receiving data concerning traffic responsive to the request from the data provider," as amended claim 58 now recites.  Likewise, nowhere does Miyake teach or suggest the inventive apparatus which can be "configured to form a request for data concerning traffic . . . and to process responsive data to the request, the responsive data being included in traffic data received from a data provider," as claim 65 recites.
> Dussell discloses a position based personal digital assistant.

> However, like Miyake, Dussell fails to teach or suggest the above-quoted limitations requiring, among others, that the inventive apparatus request specific traffic data from an external data provider.  A fortiori, both Miyake and Dussell fail to teach or suggest showing, on a display, traffic information resulting from processing the specific traffic data "responsive" to such a request, as claims 51, 58 and 65 further recite.  As such, claims 51, 58 and 65, together with their dependent claims, are patentable over Miyake in view of Dussell.

(Id. at SS-G00002658-59 (ellipses in original, internal citations omitted).)

Although a close question, the Court finds the applicants did not clearly and unmistakably surrender an embodiment where the request is not sent to the data provider. The applicants sought to distinguish three different independent claims from Miyake and Dussell: proposed claims 51, 58, and 65 (which is now claim 1).  Proposed claims 51 and 58 contained express claim language that the device "request data from [the] data provider" in claim 51, and that the device have a "transmission element for causing transmission of a request for traffic data to [the] data provider" in claim 58.  Claim 65, on the other hand, contained no such express language requiring that the request be sent to the data provider. Rather, claim 65 set forth claim limitations related to a processor configured to send a request and receive data in response, the responsive data being included in the traffic data received from a data provider.

The applicants distinguished all three claims from Miyake, which no party provides to the Court, but which is described in the patent prosecution history as a purely passive listening device.  Thus, the applicants may have been distinguishing claim 65 on the basis that it set forth as a limitation that the processor form a request and receive a response for processing, which Miyake apparently cannot do given the applicants' description of Miyake as "analogous to an FM radio."  (Mot. Partial Summ. J., Ex. Q at SS-G00002658.) It is thus unclear whether the applicants distinguished claim 65 from Miyake on the basis that the request must be sent externally from the device to an external data provider, as claims 51 and 58 unambiguously required, or whether the distinction was based on the

ability to send a request, receive a response, and process the response which consists of external provided data as claim 65 required.  The specification, which includes a description of data being sent by an external data provider via FM broadcast of local traffic, suggests the applicants distinguished Miyake on grounds other than the transmission of the request to an external data provider.  See Elbex Video, Ltd. v. Sensormatic Electronics Corp., 508 F.3d 1366, 1372 (Fed. Cir. 2007) (stating inventor did not surrender claim scope where the alleged disavowing statement in the prosecution history was not supported by the specification).

The applicants also distinguished the proposed claims from the Dussell prior art, which no party provides to the Court, but which the applicants described in their response letter as "a position based personal digital assistant."  (Mot. Partial Summ. J., Ex. Q at SS-G00002659.)  The applicants' effort to distinguish Dussell is also ambiguous.  The paragraph in which the applicants distinguish Dussell refers to "the above-quoted limitations requiring, among others, that the inventive apparatus request specific traffic data from an external data provider."  It is unclear whether the phrase, "above-quoted limitations," refers to all three proposed claims.  It also is unclear what the applicants meant by "among other[]" limitations, and whether the "other" limitations referred to included the different claim language in claim 65.  In addition to failing to provide the Court with either the Miyake or Dussell prior art references, the parties did not provide the Court with any further communication between the PTO and the applicants which might illuminate the ongoing conversation between the applicants and the PTO following the applicants' above-quoted response to the examiner's rejection of claims 51-65.

In sum, the Court concludes that while the prosecution history supports Garmin's interpretation, the prosecution history and the evidence presented to the Court do not constitute a clear and unmistakable disavowal.  Instead, the Court finds the claim language and specification reflect the invention which the PTO ultimately allowed.  See Aventis

Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1331 (Fed. Cir. 2012) ("The prosecution history can offer insight into the meaning of a particular claim term, but the [c]laim language and the specification generally carry greater weight." (internal quotation omitted)). Neither the claim language nor the specification set forth the limitation in claim 1 that the invention send the request to an external data provider.  Given the stringent standard to find disavowal, the inherent ambiguities in prosecution histories generally and in this prosecution history in particular, and in light of the allowed claim language and specification, the Court will not construe claim 1 of the '455 Patent to include such a limitation.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike Portions of Defendants' First Amended Non-Infringement, Invalidity, and Unenforceability Contentions (Doc. #93) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment (Doc. #115) is hereby DENIED.

DATED:  July 24, 2014

_____
PHILIP M. PRO
United States District Judge