UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

SILVER STATE INTELLECTUAL
TECHNOLOGIES, INC.,

    Plaintiff,

v.

GARMIN INTERNATIONAL, INC., and
GARMIN USA, INC.,

    Defendants.

2:11-CV-1578-PMP-PAL

ORDER on Plaintiff's Motion to
Enforce Representative Product
Agreement (Doc. #98)

Presently before the Court for consideration is Plaintiff Silver State Technology, Inc.'s Motion to Enforce Representative Product Agreement (Doc. #98), filed on November 20, 2013. Defendants Garmin International, Inc. and Garmin USA, Inc. (collectively, "Garmin") filed an Opposition (Doc. #100) on December 9, 2013. Silver State filed a Reply (Doc. #101) on December 19, 2013. For the reasons set forth below, the Court finds no enforceable representative product agreement exists, and that Plaintiff's Motion must therefore be denied.

## I. BACKGROUND

Plaintiff Silver State Intellectual Technologies, Inc. ("Silver State") owns the legal rights to several patents that generally cover various navigation processes and devices. After several stipulations, the four Silver State patents that remain at issue in this case are United States Patent Nos. 7,702,455 (the '455 Patent), 7,522,992 (the '992 Patent), 7,593,812 (the '3812 Patent), 7,739,039 (the '039 Patent) (collectively, "the Patents at

issue"). (See Order Granting Stip. (Doc. #49); Order Granting Stip. (Doc. #58); Order Granting Stip. (Doc. #92); Order Granting Stip. (Doc. #96).)

On January 11, 2013, Garmin provided Silver State with a draft proposal for product stipulations. (Pl.'s Mot. to Enforce Rep. Product Agreement ["Mot. to Enforce"], Ex. 1.) The proposal included the "nuvi 3490LMT" for the '455 Patent, the '992 Patent, and the '3812 Patent. (Id. at 4, 7-9.) On February 7, 2013, after an exchange of emails, Garmin and Silver State added the nuvi 3490LMT to the draft representative product agreement for the '039 Patent. (Mot. to Enforce, Exs. 3-4.)

On April 5, 2013, at a hearing before the Court, counsel for Silver State informed the Court that the parties were "working on, and I think pretty much close to being done, on some sort of agreement about having representative products to be used at trial . . . ." (Mot. to Enforce, Ex. 5 at 97:23-25.) Counsel for Garmin did not comment on the prospect of a representative product agreement. One week later, on April 11, Silver State served Garmin with its Third Amended Initial Disclosures, which stated that "[t]he parties have agreed to use representative products for each asserted patent to represent the many accused product models. . . . Exhibits H through N identify the products being represented by each 'representative product' and the infringing features in more detail." (Mot. to Enforce, Ex. 6 at 1.) Silver State then provided a table that listed the nuvi 3490LMT as the representative product for the Patents at issue. (Id. at 2.) On April 12, 2013, counsel for Garmin sent Silver State a revised draft representative product agreement, which listed the nuvi 3490LMT as representatives for the Patents at issue, and requested confirmation from Silver State that the draft was satisfactory. (Mot. to Enforce, Ex. 7.) Neither party presents evidence of Silver State's response to Garmin's April 12 draft.

On August 23, 2013, counsel for Garmin wrote to Silver State and explained that "there are a few outstanding issues that have prevented (and continue to prevent) us from

finalizing the [representative product agreement]."  (Mot. to Enforce, Ex. 9.)  Garmin then provided a list of the remaining issues that, once clarified, would get the parties "positioned to finalize the product stipulation and its terms."  (Id.)  Over the next two months, the parties continued to revise and edit the draft representative product agreement.  (See Mot. to Enforce, Exs. 10-17.)

Fact discovery in this case closed on October 18, 2013.  (Order (Doc. #86).)  On November 4, 2013, counsel for Garmin wrote to counsel for Silver State and explained that Garmin would not yet sign the representative product agreement because Garmin had concerns regarding "the scope of the stipulation and what/how it will apply in this case."  (Mot. to Enforce, Ex. 19.)  Counsel for Garmin indicated that further discussion may have to wait until Garmin reviewed Silver State's expert report and final infringement allegations.  (Id.)  Silver State responded on November 6 with a revised product agreement, "with limiting language regarding Silver State's infringement theories with respect to the Representative Product."  (Mot. to Enforce, Ex. 20.)

The parties met via telephone on November 11, 2013, during which Garmin raised concerns regarding whether the representative product was sold with a traffic antenna.  (Decl. of Paul R. Hart Supp. Defs.' Resp. to Mot. to Enforce (Doc. #100) at ¶ 7-8.)  Silver State responded that whether the product is sold with a traffic antenna is unimportant, as Silver State alleges infringement by products with the capability to receive traffic information.  (Decl. of Frederick S. Berretta Supp. Pl.'s Mot. to Enforce at ¶ 23.)

Silver States now moves the Court to enforce a representative product agreement between the parties.  Silver State argues an agreement was presented to the Court without objection, and further argues Silver State relied in good faith on the parties' agreement.  Garmin responds that Silver State's infringement contentions are too unclear and that the representative product agreement does not accurately reflect the variations in Garmin's

products.

## II. DISCUSSION

Silver States moves the Court to enforce a representative product agreement that will designate the nuvi 3490LMT as the representative product for the alleged infringement of the Patents at issue. Silver State argues the agreement is enforceable because the parties agreed before the Court during the hearing on April 5, 2013, that the nuvi 3490LMT would be the representative product for the Patents at issue. Silver State further contends that it relied in good faith on the representative product agreement, and that Garmin knew of such reliance. Silver State thus argues that Garmin's concerns, which arose after the close of fact discovery, are baseless and merely an excuse to avoid entering into the representative product agreement.

Garmin responds that it cannot sign the representative product agreement because Silver State's infringement contentions remain unclear and unsettled. Garmin further argues the representative product agreement does not accurately reflect Garmin's products because the nuvi 3490LMT is sold bundled with a traffic antenna, while other Garmin products the nuvi 3490LMT would represent are sold without a traffic antenna. Finally, Garmin argues that Silver State would not be prejudiced if the representative product agreement was not enforced because Garmin provided extensive discovery on products other than the nuvi 3490LMT.

Silver State replies that whether the accused devices are sold with or without a traffic antenna "is irrelevant to infringement, because the asserted claims only require that the devices have the capability to infringe." (Reply Mot. to Enforce (Doc. #101) at 1.) Silver State further argues the question of whether an accused product is sold with a traffic antenna does not apply in any case to the accused products under the '992 Patent and the '3812 Patent, and that Garmin does not raise any concerns regarding the application of the

representative product agreement to those Patents.  Finally, Silver State argues it will be prejudiced if the representative product agreement were not enforced, as this would require Silver State to do additional discovery on the sales of separate traffic accessories, as well as delay the case.

Parties may stipulate to procedures governing or limiting discovery, including, as in this case, a representative product agreement.  Fed. R. Civ. P. 29(b).  However, to be enforceable, the agreement must have "an offer and acceptance, meeting of the minds, and consideration."  <u>Laguerre v. Nev. Sys. of Higher Educ.</u>, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (quotation omitted).  "[P]reliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms."  <u>Id.</u>

Here, the record does not support a finding that the parties entered into an enforceable representative product agreement.  Silver State contends the parties' agreement was acknowledged by the Court at the hearing on April 5, 2013, but the transcript merely reveals the parties informed the Court that they were "close to being done," which is not the same as having reached an agreement, particularly where the record suggests they had not. That Silver State served Garmin with amended disclosures stating a representative product agreement existed is not enough to establish an enforceable contract without Garmin's assent.  See <u>Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad</u>, 591 F.3d 1208, 1211 (9th Cir. 2010) ("[C]ontracting, like dancing the tango, takes two; one party's belief that there was an agreement isn't enough.").

Additionally, Silver State fails to demonstrate that Garmin acted in bad faith by not signing the proposed representative product agreement after months of negotiations. Based on a review of the parties' correspondence provided to the Court, at no point does Garmin indicate its final approval of the product agreement.  Silver State's interpretation of any progress in the negotiations as a sign of imminent agreement is not enough to establish

a binding agreement. Likewise, that Garmin initially proposed the nuvi 3490LMT as a potential representative product does not translate to Garmin's definitive agreement, but instead was a part of the negotiations toward an agreement. While Garmin did not specify its objections to the proposed agreement on the basis of the traffic antenna until after the close of fact discovery, there is no evidence that the parties agreed to stipulate to a representative product by a certain time.

Finally, the record does not support Silver State's argument that it will be prejudiced if the representative product agreement is not enforced. Garmin provided Silver State with discovery materials beyond the scope of the nuvi 3490LMT. Additionally, considering the parties began formulating a representative product agreement over nine months prior to the close of fact discovery, Silver State could have set a date by which either Garmin signed the agreement or Silver State expanded its discovery requests as it deemed necessary. Instead, Silver State chose to rely on the proposals for a representative product agreement that were never finalized. For the above reasons, the Court finds the parties have not reached an enforceable representative product agreement.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Silver State, Inc.'s Motion to Enforce Representative Product Agreement (Doc. #98) is hereby DENIED.

DATED: July 28, 2014

_____
PHILIP M. PRO
United States District Judge